651 S.E.2d 403

**James Gregory LOGAN**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0468–06–3.**

Court of Appeals of Virginia,
Salem.

Oct. 23, 2007.

S. Jane Chittom, Appellate Defender (Virginia Indigent Defense Commission, on briefs), for appellant.

Donald E. Jeffrey, III, Assistant Attorney General (Robert F. McDonnell, Attorney General, on brief), for appellee.

Present: FELTON, C.J., and FRANK and KELSEY, JJ.

FRANK, Judge.

James Gregory Logan, appellant, appeals the judgment of the trial court revoking his previously suspended sentence after finding that he violated the terms and conditions of his probation. He contends that the trial court erred: 1) in finding that the officer who made the warrantless entry into appellant's rooming house had not acted in bad faith; and 2) in revoking appellant's suspended sentence on grounds other than those stated in the probation violation report. For the reasons stated, we affirm.

## PROCEDURAL HISTORY

In 2002, appellant was tried and convicted for distribution of cocaine as an accommodation. The trial court sentenced him to serve five years, but suspended three years and seven months of that sentence. On January 12, 2004 the trial court convicted appellant for possession of cocaine. Appellant appealed that second conviction, contending that police entered

his rooming house and seized the cocaine in violation of his Fourth Amendment rights. This Court, sitting *en banc*, agreed with appellant, reversed the conviction, and dismissed the indictment by opinion dated August 2, 2005. *See Logan v. Commonwealth*, 47 Va.App. 168, 622 S.E.2d 771 (2005) (en banc). The Commonwealth did not appeal that order.

By letter dated February 4, 2004, and prior to the release of this Court's decision, appellant's probation officer requested a show cause hearing based upon appellant's subsequent conviction. The Commonwealth's attorney responded by letter filed December 21, 2005, "[R]egardless of the results of the appeal, the Commonwealth hereby asks for a new revocation hearing based on violation of the defendant's good behavior as a result of the facts of the same incident—as distinguished from the fact of the conviction itself." A copy of the response letter was mailed to counsel for appellant. The trial court then heard the revocation proceeding, found appellant in violation of the conditions of his probation, and revoked a portion of appellant's suspended sentence. This appeal follows.

## BACKGROUND

Danville Police Officer Jerry Lee Pace, Jr. observed appellant and believed he was an individual named James Chappell, who was wanted on an outstanding warrant. Pace had never seen Chappell, but had a physical description of Chappell along with information that Chappell was in the neighborhood. Pace followed appellant into the rooming house where appellant resided. Pace had neither an arrest warrant for Logan nor a search warrant for the rooming house. Once inside, Pace watched Logan walk up a flight of steps to his room on the third floor where he observed Logan in possession of cocaine.

Pace testified that he entered the building without knocking or ringing the doorbell. He further stated that he had been inside the rooming house before this date. He testified he saw a sign on a lamppost that read "rooms," but did not recall seeing any other signs.

## ANALYSIS

### I. Exclusionary Rule

■ Appellant first contends that the evidence derived from the warrantless entry into appellant's rooming house in violation of the Fourth Amendment was not admissible at his probation revocation hearing. Because the exclusionary rule does not apply to revocation hearings, we disagree with appellant.

Citing *Anderson v. Commonwealth*, 251 Va. 437, 440, 470 S.E.2d 862, 863 (1996), appellant contends that the exclusionary rule is not applicable in a probation revocation proceeding absent a showing of bad faith on the part of the police. Appellant argues that at oral argument in *Logan*, 47 Va.App. 168, 622 S.E.2d 771, the Commonwealth expressly withdrew its argument that Officer Pace entered the rooming house on a good faith belief that Logan was Chappell. Appellant reasons that because there is no basis for a finding of good faith, there is necessarily a showing of bad faith and the exclusionary rule applies.[1] We disagree.

In *Anderson*, the Supreme Court held that "the exclusionary rule is not applicable in a probation revocation proceeding absent a showing of bad faith on the part of the police." *Anderson*, 251 Va. at 440, 470 S.E.2d at 863. The Supreme Court recognized that "[a]pplication of the exclusionary rule in a probation revocation proceeding would frustrate the remedial and protective purposes of the probation system, because a court would not be permitted to consider relevant evidence of the probationer's rehabilitation or regression." *Id.*

Generally, "[t]he purpose of the exclusionary rule [is] 'to deter police misconduct'" by denying illegally obtained evidence from being admitted in the defendant's *criminal* trial. *Johnson v. Commonwealth*, 21 Va.App. 172, 175, 462 S.E.2d

---

1. On brief appellant relies on the "good faith exception" as set out in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), a Fourth Amendment case discussing good faith reliance on a defective search warrant.

907, 909 (1995) (quoting *Derr v. Commonwealth*, 242 Va. 413, 422, 410 S.E.2d 662, 667 (1991)). However, in deciding whether to extend the exclusionary rule to probation violation hearings, courts initially examined whether extension of the rule would produce deterrent benefits in that regard. *See United States v. Winsett*, 518 F.2d 51, 54 (9th Cir.1975).

[W]hen the police at the moment of search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any criminal proceeding. The police have nothing to risk: If the motion to suppress in the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary rule to the probation revocation proceeding may be necessary to effectuate Fourth Amendment safeguards.

*Id.* at 54 n. 5. Thus, the bad faith analysis in this context initially appeared to center on the nexus between the officer's conduct and his knowledge of the suspect's probationary status. *See People v. Stewart*, 242 Ill.App.3d 599, 182 Ill.Dec. 773, 610 N.E.2d 197, 204–05 (1993) (holding that even though police knew appellant was on probation, nothing in the record demonstrated appellant's probationary status provided an incentive to conduct the search and seizure).

However, in *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 363, 118 S.Ct. 2014, 2020, 141 L.Ed.2d 344 (1998), the United States Supreme Court concluded that the exclusionary rule under the Fourth Amendment does not apply in a revocation of parole proceeding, with the Court specifically noting its repeated refusal to extend the ruling to proceedings other than criminal trials. The court reasoned:

Application of the exclusionary rule would both hinder the functioning of state parole systems and alter the traditionally flexible, administrative nature of parole revocation proceedings. The rule would provide only minimal deterrence benefits in this context, because application of the rule in

the criminal trial context already provides significant deterrence of unconstitutional searches. We therefore hold that the federal exclusionary rule does not bar the introduction at parole revocation hearings of evidence seized in violation of parolees' Fourth Amendment rights.

*Id.* at 364, 118 S.Ct. at 2020.

The Court further declined to adopt a "special rule" for those situations where the officer performing the search is aware of any post-release status of the subject of his search. The Court concluded, "such a piecemeal approach to the exclusionary rule would add an additional layer of collateral litigation regarding the officer's knowledge of the parolee's status." *Id.* at 368, 118 S.Ct. at 2022.

We find no relevant distinction between the Supreme Court's application of the exclusionary rule to parole revocation hearings and our application of the rule to probation violation hearings. Indeed, for purposes of evaluating illegally seized evidence, our Court has often considered "probation, parole, or suspended sentence revocation proceedings" as similar "secondary proceeding[s]." *Anderson,* 20 Va.App. at 365, 457 S.E.2d at 398. So, governed by the principles set forth in *Scott,* we are constrained to find that the exclusionary rule does not apply to probation revocation hearings. The trial court, therefore, properly considered appellant's possession of cocaine at his revocation proceeding.[2]

## II. Grounds

Appellant next contends the trial court erred in revoking his suspended sentence on grounds other than those stated in his probation violation report. Specifically, he argues that the violation report alleged a criminal conviction, yet the trial court heard evidence that he violated the "good behavior"

---

2. We acknowledge that the Court's decision in *Scott* "forecloses the possible exception ... commented upon in *United States v. Winsett,* 518 F.2d 51, 54 n. 5 (9th Cir.1975), arising when the officers conducting the search know the suspect is under post-release supervision." *United States v. Hebert,* 201 F.3d 1103, 1104 n. 2 (9th Cir.2000).

condition of his suspended sentence. He claims he was never given written notice of the nature of this alleged violation. The record belies this argument.

At the outset we note that both the United States Supreme Court and this Court have previously held that probation revocation hearings are not a stage of criminal prosecution and therefore a probationer is not entitled to the same due process protections afforded a defendant in a criminal prosecution. *Davis v. Commonwealth,* 12 Va.App. 81, 84, 402 S.E.2d 684, 686 (1991). *See Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Nevertheless, a court may not summarily revoke a previously suspended sentence without notice, hearing, and benefit of counsel. *Copeland v. Commonwealth,* 14 Va.App. 754, 756, 419 S.E.2d 294, 295 (1992). The Court in *Morrissey* applied due process protections to parole revocation proceedings, stating that minimum due process requirements include: (1) written notice; (2) disclosure of the evidence against the accused; (3) an opportunity to be heard and to present evidence and witnesses; (4) an opportunity to confront and cross-examine adverse witnesses; (5) a "neutral and detached" hearing body; and (6) a written statement as to the evidence relied on and reasons for revoking parole. *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604. Procedural protections were extended to probation revocations in *Scarpelli,* 411 U.S. at 782, 93 S.Ct. at 1760.

While it is true that appellant was not provided a written statement issued by the court,[3] the record clearly demon-

---

**3.** Code § 19.2–306(B) provides in relevant part:

The court may not conduct a hearing to revoke the suspension of sentence unless the court, within one year after the expiration of the period of probation or the period of suspension, issues process to notify the accused or to compel his appearance before the court. If neither a probation period nor a period of suspension was fixed by the court, then the court shall issue process within one year after the expiration of the maximum period for which the defendant might originally have been sentenced to be incarcerated.

strates that appellant received written notice from the Commonwealth and he knew what probation violations were lodged against him. The Commonwealth provided appellant's attorney with a copy of the letter to the trial court requesting appellant's probation be revoked because of a violation of good behavior. Additionally, appellant was not taken by surprise,[4] as he knew there was a hearing scheduled, had the benefit of counsel, and knew the specifics of the evidence alleged against him. The Commonwealth did not present new facts, just a new reason for revocation. Appellant was also allowed to present evidence at the hearing.

In any event, appellant was given the opportunity to cure the purported defect in the notice. Appellant three times declined the trial court's offer to continue this matter in order that he be properly served with notice. "Indeed, '[n]o litigant, even a defendant in a criminal case, will be permitted to approbate and reprobate—to invite error . . . and then to take advantage of the situation created by his own wrong.'" *Billips v. Commonwealth*, 48 Va.App. 278, 296, 630 S.E.2d 340, 349 (2006) (quoting *Fisher v. Commonwealth*, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988)). Accordingly, appellant cannot now complain that the trial court erred in revoking his suspended sentence without notice when he himself refused to accept the court's invitation to remedy any defect in service by continuing the matter to a later date.

Appellant also argues that the Commonwealth's offer to continue the hearing and serve a new notice of revocation upon appellant, while keeping appellant in custody, did not cure the error in not giving proper notice. The trial court offered to grant appellant a continuance so that he could be properly served with notice. Appellant declined, asserting that he did not wish to spend any more time incarcerated. While appellant was presented with the choice of either accepting improper notice or accepting a continuance, appellant

---

4. Appellant never claimed he was surprised by the nature of the violation.

waived any objection to being presented with this dilemma because he refused the offer of a continuance and never requested a bond pending a continuance. *See* Rule 5A:18. This Court will not consider an argument on appeal that was not presented to the trial court. *Ohree v. Commonwealth,* 26 Va.App. 299, 308, 494 S.E.2d 484, 488 (1998); Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of this question on appeal.

Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions. *See Redman v. Commonwealth,* 25 Va.App. 215, 221, 487 S.E.2d 269, 272 (1997). We will not consider such an argument *sua sponte. Edwards v. Commonwealth,* 41 Va.App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc* ).

Appellant further argues that his continued detention in the local jail awaiting a revocation hearing was unlawful. As this was not one of appellant's questions presented, we will not consider this argument on appeal. *See* Rule 5A:12(c) ("Only questions presented in the petition for appeal will be noticed by the Court of Appeals.").

■ Finally, appellant argues that Code § 19.2–306 directs that notice of a violation must be issued by a court, not the Commonwealth. This argument was not presented to the court below, and this Court will not consider an argument on appeal that was not presented to the trial court. *Ohree,* 26 Va.App. at 308, 494 S.E.2d at 488; Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of this question on appeal and we will not raise an issue *sua sponte. Edwards,* 41 Va.App. at 761, 589 S.E.2d at 448.

## CONCLUSION

For the foregoing reasons, we find the trial court did not err in admitting the evidence of cocaine at appellant's revocation hearing. We further find the court did not err in revoking appellant's suspended sentence on the ground that he violated

the "good behavior" provision. Accordingly, we affirm the trial court's ruling.

*Affirmed.*