COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Alston and Senior Judge Felton
Argued at Alexandria, Virginia

PUBLISHED

KIRK T. MILAM

                                                          OPINION BY
v.        Record No. 0079-15-4              JUDGE WILLIAM G. PETTY
                                                          NOVEMBER 17, 2015
SHEILA J. MILAM

          FROM THE CIRCUIT COURT OF RAPPAHANNOCK COUNTY
                      Jonathan C. Thacher, Judge Designate

          J. Burns Earle, III (Miller, Earle & Shanks, PLLC, on briefs), for
          appellant.

          Peter W. Buchbauer (Buchbauer & McGuire, P.C., on brief), for
          appellee.


          Kirk T. Milam ("father") assigns nine errors to the circuit court's award of increased

child support.  He assigns errors to the court's factual finding of income for Sheila J. Milam

("mother"), to the court's factual finding of his income, and to the court's resulting determination

of his child support obligation.  Father argues, among other things, that the circuit court erred in

increasing his child support obligation because his motion was entitled "Motion to Reduce Child

Support" and mother did not expressly present a request for an increase.  He additionally argues

that the circuit court erred in including his adult son in mother's household for purposes of

calculating the applicable poverty level pursuant to Code § 20-108.2(G)(3)(d).  He also argues

that the court erred in failing to include in mother's income the spousal support he was obligated

to pay, though she did not receive it all.  He argues further that the circuit court erred in setting

the conditions for the suspension of his sentence after the court found him guilty of contempt.

For the reasons set forth below, we affirm in part and reverse and vacate in part the circuit court's ruling.

## I. BACKGROUND

On appeal, we view the evidence "'in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom.'" Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 40, 764 S.E.2d 284, 287 (2014) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991)). In this case, mother prevailed below.

Mother and father were married in 1994 and had five children together. At the time of the modified final divorce decree on April 9, 2012, three of the children were minors. One son was over eighteen years old but had not yet graduated from high school. These four children continued to live with mother during the period relevant to this appeal.

On May 3, 2012, father appealed to this Court the final divorce decree. On June 29, 2012, after his son graduated from high school, father filed "Defendant's Motion to Reduce Child Support and Spousal Support." This Court issued its opinion regarding the final divorce decree on April 30, 2013, affirming in part, reversing in part, and remanding. Milam v. Milam, No. 0837-12-4, 2013 Va. App. LEXIS 134 (Va. Ct. App. Apr. 30, 2013). After oral argument by the parties, the circuit court issued an order upon remand on July 25, 2014. In that order, the court found that the shared custody guidelines were not presumptive under the circumstances of this case because mother's income was less than 150% of the federal poverty guidelines. The court further found that use of the sole custody guidelines was more just and appropriate pursuant to Code § 20-108.2(G)(3)(d). The court calculated the presumptive amount of $1169 for the four children father was obligated to support as of the date of the final divorce decree. It then "rounded up" and established father's child support obligation in the amount of $1170. This

- 2 -

obligation had a commencement date of January 1, 2012. The order noted that father's motion to reduce child support would be addressed at a subsequent hearing.

The hearing on father's motion to reduce child support was held on September 24, 2014. The court issued a letter opinion dated November 17, 2014, which was incorporated into the final order dated December 23, 2014.[1] In that letter opinion, the court calculated father's income to be $11,199 per month. The court rejected father's argument that his 2012 income tax return provided the best estimate of his current income. The court concluded it need not rely on the 2012 tax return because it "heard no evidence in support of [father's] inability to file his 2013 tax return." In part, the court reasoned that father's argument was rebutted by father's "own witness's testimony." Specifically, the court noted that father's "Certified Public Accountant testified that he only needed [father's] bank statements in order to file [father's] 2013 tax return." The record indicates, however, that the witness was called by mother, not father. Further, contrary to the court's description, the record indicates that the witness was female, rather than male, and described herself as a tax preparer rather than a Certified Public Accountant. Nonetheless, the court concluded from the witness' testimony that "there was no reason why [father's] 2013 tax return could not be filed." As a result, it rejected the argument that the court should rely on the 2012 tax return, which was the most recently *filed* one.

Instead, the court agreed with mother that the "most accurate estimation of [father's] income is reflected by his earnings thus far in 2014." The earnings were evidenced by father's bank deposits and by reimbursement invoices for father's court-appointed work from January to July 2014.

---

[1] The circuit court issued a suspending order on December 8, 2014 to retain jurisdiction in the case.

Turning to mother's income, the parties agreed that mother's income from employment alone was about $745 per month. The court found no merit in father's argument that spousal support owed by father should be included in mother's income. The court reasoned that father "ha[d] not paid [spousal support]" and had arrearages in the amount of $23,559.94. The court therefore concluded that father's support obligations should not be included in determining mother's actual income. Further, the court rejected father's reasoning that mother must earn at least $3000 per month because she testified that she tries to tithe to her church 10% of her income, or $300. The court found "there [was] no evidence to support [father's] argument that [mother] actually tithes $300.00 per month."

Having found mother's income to be $745 per month, the court also found that mother's income was below 150% of the federal poverty level for purposes of Code § 20-108.2(G)(3)(d). In making that finding, the court included the parties' adult son in mother's household. The parties agreed that the son lived with mother. The court rejected father's argument that only those children whom he is obligated to support under Code § 20-124.2 should be included in household size. The court reasoned that the federal guidelines base the poverty level on number of persons in the household, without regard to whether those persons are dependents. Although it is undisputed that father has more than ninety days of visitation under the shared custody guidelines, the court found that application of the shared custody guidelines would seriously impair mother's ability to maintain minimal adequate housing and other necessities for her children. Accordingly, the court applied the sole custody guidelines. The court found that father's presumptive obligation was $1380 per month for the support of his three minor children. The court awarded mother that amount.

During the same hearing, the court also addressed mother's rule to show cause based on father's failure to pay amounts already ordered by the court. The court found father in contempt

and sentenced father to twelve months' incarceration. The court suspended the sentence with five enumerated conditions, including that father pay certain court-ordered payments and arrearages according to the payment plan in the court's December 23, 2014 order. The fifth condition stated,

> 5. Upon receipt of a sworn affidavit that any payments due are late or unpaid, or that Defendant failed to perform as set forth in these conditions, a [capias] shall issue and Defendant shall be remanded to the custody of the Sheriff of Rappahannock County, Virginia for service of his twelve month jail sentence.

Father appealed the final order to this Court.

## II. ANALYSIS

"'We begin our analysis by recognizing the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness. Thus, we will not invalidate a court's decree unless the only reasonable interpretation thereof requires invalidation.'" Stiles v. Stiles, 48 Va. App. 449, 453, 632 S.E.2d 607, 609 (2006) (quoting Riggins v. O'Brien, 263 Va. 444, 448, 559 S.E.2d 673, 675-76 (2002)). "The court's paramount concern when awarding child support is the best interest of the children." Id. at 456, 632 S.E.2d at 611. "The court must consider the basic needs of the child, the parent's ability to pay, and to the extent that the parent is able to provide more than the basic necessities of life, the degree to which the child should reasonably share in his or her parents' prosperity." Conway v. Conway, 10 Va. App. 653, 658, 395 S.E.2d 464, 466-67 (1990).

### A. AN INCREASE IN CHILD SUPPORT MAY ARISE FROM APPLICATION OF THE STATUTORY GUIDELINES EVEN IF A PARENT REQUESTS A REDUCTION ONLY

Father argues that the circuit court erred as a matter of law by increasing his child support obligation even though the only motion before the court was entitled "Motion to Reduce Child Support." Father argues, "Fundamental rules of pleading provide that no court can base its

judgment or decree upon a right which has not been pleaded and claimed." Fadness v. Fadness, 52 Va. App. 833, 843, 667 S.E.2d 857, 862 (2008). Father does not argue that the issue of child support was improperly before the court. Rather, he argues that the court was barred from increasing, instead of reducing, the child support amount because the only motion before the court was to reduce support. We disagree.

"The determination of child support is a matter of discretion for the circuit court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." Oley v. Branch, 63 Va. App. 681, 699, 762 S.E.2d 790, 799 (2014).

> "An abuse of discretion . . . can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

Landrum v. Chippenham & Johnston-Willis Hosps., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011) (alteration in original) (quoting Kern v. TXO Production Corp., 738 F.2d 968, 970 (8th Cir. 1984)). Thus, unless it appears from the record that the circuit court judge has abused his discretion by not considering or by misapplying one of the statutory mandates, the child support award will not be reversed on appeal. See Wright v. Wright, 61 Va. App. 432, 454, 737 S.E.2d 519, 529-30 (2013) (discussing the standard of review in an equitable distribution case).

Regardless of father's choice of title for his motion, he requested a modification of child support pursuant to Code § 20-108. Section 20-108 provides:

> The court may, from time to time after decreeing as provided in § 20-107.2, on petition of either of the parents, or on its own motion . . . revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require.

- 6 -

Evaluation of a motion to modify child support requires a multi-step analysis by the court.  First, the movant bears the burden of proving a material change of circumstance.  Crabtree v. Crabtree, 17 Va. App. 81, 88, 435 S.E.2d 883, 888 (1993).  "Once a child support award has been entered, only a showing of a material change in circumstances will justify modification of the support award."  Id.  The court is then required to determine the presumptive child support amount by using the statutory guidelines.  Id. ("The statutory guidelines must be applied not only in the initial child support hearing, but also in hearings to modify support."); see Hiner v. Hadeed, 15 Va. App. 575, 579, 425 S.E.2d 811, 813 (1993) ("In a proceeding to increase, decrease, or terminate child support under Code §§ 20-108 and 20-112, the trial judge must determine and consider the presumptively correct award of child support according to the guidelines.").  Thus, when a material change has been established, "the initial step to determine how to modify the support award is to calculate the amount presumed to be correct according to the guidelines." Hiner, 15 Va. App. at 579, 425 S.E.2d at 813.

Here, after a material change in circumstances was established,[2] the court was required to determine the presumptive support amount by following the statutory guidelines.  This the court did.  Although father is now required to support three minor children, rather than four, his increase in income resulted in a higher presumptive amount.  Father argues that because he titled his motion for modification a "Motion to Reduce Child Support" the court was precluded from increasing the monthly support for father's three minor children from $1170 to $1380.

We disagree.  Father relies on our decisions in Fadness and in Boyd v. Boyd, 2 Va. App. 16, 340 S.E.2d 578 (1986), for the proposition that an increase in child support cannot be granted

---

[2] Father argued in his motion that his son's graduation from high school was a material change of circumstance.  Neither father nor mother raises the issue of material change of circumstance on appeal, and we therefore do not address it here.

unless the non-moving parent specifically requests the increase.  However, both these cases dealt with spousal support.  "Spousal support and child support represent two distinct remedies directed at two very different interests: the spouse's needs and the child's needs."  Robbins v. Robbins, 48 Va. App. 466, 484, 632 S.E.2d 615, 624 (2006).  This can be seen, for example, in Code § 20-108.1, which establishes a presumptively correct amount for child support.  No such counterpart exists for spousal support.  Reece v. Reece, 22 Va. App. 368, 373 n.1, 470 S.E.2d 148, 151 n.1 (1996) ("Unlike spousal support cases, in cases involving the modification of child support obligations, a trial court must calculate child support according to the presumptive amounts outlined in Code § 20-108.2.  Such presumptive amounts do not exist in cases involving spousal support.").

"Statutory child support guidelines were designed 'to assure that both the child's needs and the parent's ability to pay are considered in determining the amount of support awards.'"  Oley, 63 Va. App. at 689, 762 S.E.2d at 793-94 (quoting Richardson v. Richardson, 12 Va. App. 18, 20, 401 S.E.2d 894, 895 (1991)).  Child support awards are thus crafted for the child's benefit, not for the purpose of granting a parent relief.  See Stiles, 48 Va. App. at 456, 632 S.E.2d at 611 ("The court's paramount concern when awarding child support is the best interest of the children.").  To this end, a court has authority to "make such further decree[s] as it shall deem expedient concerning support of the minor children . . . ."  Code § 20-124.2(C).  Further, the court has the authority to revise child support "on its own motion."  Code § 20-108.  Thus, courts may exercise the discretion to modify child support even in the absence of a request by either parent.

Nevertheless, the court's discretion is not without bounds.  It is well established that the court *must* determine and consider the presumptively correct amount when considering

- 8 -

modification of a parent's child support obligation.[3] Hiner, 15 Va. App. at 579, 425 S.E.2d at 813. It would be absurd to require the court to determine the presumptive amount and then require it to shut its eyes to this amount because the motion requested a reduction only.

Therefore, we hold that when a motion for modification of child support is before the court, the court may increase or decrease the amount of child support pursuant to the statutory guidelines, regardless of the wording of the motion seeking modification and regardless of whether the other parent specifically requests such relief.

Here, the circuit court had before it a motion to modify child support. The court followed the statutory process of determining the presumptive amount and awarded that amount. Finding that the circuit court did not abuse its discretion when considering and applying the statutory process for modification of child support, we will not disturb its decision.

### B. THE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION IN APPLYING THE FEDERAL POVERTY GUIDELINES

Father argues that the circuit court erred as a matter of law by including one of the parties' adult children as part of mother's household for purposes of determining whether Code § 20-108.2(G)(3)(d) applied.

"The determination of child support is a matter of discretion for the circuit court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." Oley, 63 Va. App. at 699-700, 762 S.E.2d at 799.

Section 20-108.2(G)(3)(d) states:

> Any calculation under this subdivision [dealing with shared custody] shall not create or reduce a support obligation to an amount which seriously impairs the custodial parent's ability to maintain minimal adequate housing and provide other basic

---

[3] We previously reversed this case in part and remanded it to the circuit court precisely because, among other things, the court had failed to make an express finding of the presumptive child support amount. Milam, 2013 Va. App. LEXIS 134.

necessities for the child. If the gross income of either party is equal to or less than 150 percent of the federal poverty level promulgated by the U.S. Department of Health and Human Services from time to time, then the shared custody support calculated pursuant to this subsection shall not be the presumptively correct support and the court may consider whether the sole custody or the shared custody support is more just and appropriate.

The federal guidelines establish the poverty level based on the number of "persons in family/household." Annual Update of the HHS Poverty Guidelines, 79 Fed. Reg. 3953 (Jan. 22, 2014). The guidelines, however, "[do] not provide definitions of such terms as 'income' or 'family' because there is considerable variation in defining these terms among the different programs that use the guidelines." Id. at 3594. The federal guidelines explain that questions such as

"Should a particular person be counted as a member of the family/household?" [is] actually [a] question[] about how a specific program applies the poverty guidelines. All such questions about how a specific program applies the guidelines should be directed to the entity that administers or funds the program, since that entity has the responsibility for defining such terms as "income" or "family," to the extent that these terms are not already defined for the program in legislation or regulations.

Id.[4]

---

[4] Until 2004, the annual update included statistical definitions with a caution that "[t]here is no universal administrative definition of 'family,' 'family unit,' or 'household' that is valid for all programs that use the poverty guidelines. . . . The . . . statistical definitions . . . are made available for illustrative purposes only; in other words, these statistical definitions are not binding for administrative purposes." Annual Update of the HHS Poverty Guidelines, 69 Fed. Reg. 7336 (Feb. 13, 2004). The statistical definition given for "family" was "a group of two or more persons related by birth, marriage, or adoption who live together . . . ." Id. The statistical definition given for "household" was "all the persons who occupy a housing unit (house or apartment), whether they are related to each other or not." Id. Beginning in 2005, the annual update omitted the statistical definitions altogether and directed users of the guidelines to "consult the office or organization administering the program in question." Annual Update of the HHS Poverty Guidelines, 70 Fed. Reg. 8373 (Feb. 14, 2005).

For the purposes of Code § 20-108.2(G)(3)(d), the poverty guidelines must be construed in a manner that achieves the General Assembly's purpose. We may ascertain the General Assembly's purpose from the plain language of the statute. See Johnson v. Commonwealth, 53 Va. App. 608, 613, 674 S.E.2d 541, 543 (2009). The poverty guidelines are used to assure that a calculation of shared-custody child support "[does] not create or reduce a support obligation to an amount which seriously impairs the custodial parent's ability to maintain minimal adequate housing and provide other basic necessities for the child." Code § 20-108.2(G)(3)(d). Further, we ascertain from the statute that the General Assembly intended to give broad discretion to the trial court in using the guidelines. "[T]he court *may* consider whether the sole custody or the shared custody support is more just and appropriate," id. (emphasis added), when a party's income is below 150% of the federal poverty guidelines. The court is not *required* to reduce or adjust the presumptive shared custody amount. The General Assembly left this decision to the discretion of the court.

Here, the circuit court reasoned that the plain text of the federal poverty guidelines bases the poverty level on the number of persons in a household regardless of whether the person is classified a dependent of the party. Neither Code § 20-124.2 nor Code § 20-108.2(G)(3)(d) defines "family" or "household." It was therefore within the court's discretion to use the common meaning of the terms. See Joseph v. Commonwealth, 64 Va. App. 332, 338, 768 S.E.2d 256, 259 (2015). A household is "[a] family living together." Household, Black's Law Dictionary (9th ed. 2009). A family is "[a] group consisting of parents and their children." Family, Black's Law Dictionary (9th ed. 2009). Under these definitions, the parties' adult child is clearly a member of mother's household.

Nevertheless, father argues that only those children he is obligated to support pursuant to Code § 20-124.2 should be included in the family/household size. He contends that counting his

- 11 -

eighteen-year-old son in mother's household "creat[es] a *de facto* obligation for [father] to support a grown child whom he . . . otherwise has no legal obligation to support under [§] 20-124.2." We disagree. Determination of the poverty guideline amount for mother's household has nothing to do with the number of children father is obligated to support. Rather, the determination of whether mother's income falls below 150% of the poverty guideline is to help ensure that her support obligations do not seriously impair her ability to maintain minimal adequate housing and to provide other basic necessities for her minor children. We therefore hold that under the facts of this case the court did not abuse its discretion in including the adult child in mother's household for purposes of Code § 20-108.2(G)(3)(d).

Finding that mother's income is below 150% of the poverty level for her household size is not the end of the inquiry. Section 20-108.2(G)(3)(d) instructs that if a court finds the party's income to be below the threshold amount, it "*may* consider whether the sole custody or the shared custody support is more just and appropriate." (Emphasis added). The purpose of the statute is to avoid creating "a support obligation [in] an amount which seriously impairs the custodial parent's ability to maintain minimal adequate housing and provide other basic necessities for the child." Id. Thus, although income-earning family members might be included in the definition of household, the court must take into account such facts when determining which guidelines are more just and appropriate.

Here, the circuit court expressly found that application of the shared custody guidelines in this case would seriously impair mother's ability to maintain minimal adequate housing and to provide other necessities for her children. Finding no abuse of discretion in the court's application of the sole custody guidelines, we will not disturb the decision.

C.  OMISSION OF SPOUSAL SUPPORT FROM MOTHER'S INCOME WAS HARMLESS ERROR

"The issue of [a party's] income is a question of fact, and 'the judgment of the [circuit] court on questions of fact is entitled to great weight and will not be disturbed unless it is plainly wrong or without evidence to support it.'" Patel v. Patel, 61 Va. App. 714, 727, 740 S.E.2d 35, 42 (2013) (second alteration in original) (quoting Smith v. Board of Supervisors, 201 Va. 87, 91, 109 S.E.2d 501, 505 (1959)).

"For purposes of calculating child support, Code § 20-108.2(C) prescribes that a party's 'gross income' . . . shall include . . . income from . . . spousal support." Cranwell v. Cranwell, 59 Va. App. 155, 166, 717 S.E.2d 797, 802 (2011) (alterations in original). "Furthermore, it provides that '[f]or purposes of this subsection:  (i) spousal support received shall be included in gross income and spousal support paid shall be deducted from gross income when paid pursuant to an order or written agreement.'" Id. (quoting Code § 20-108.2(C)).

Father argues the circuit court erred "in determining [mother's] income, because the [c]ourt completely omitted from its calculation [mother's] income from the spousal support payments she receives from [father]."  In its letter opinion, the court found mother's monthly income to be $745 and rejected father's argument that spousal support be included.  The court found that father "ha[d] not been paying his support obligations."  The court noted arrearages in the amount of $23,559.94.  Although father indisputably had arrearages at the time of the hearing, the uncontested evidence shows that father made some spousal support payments to mother during the twelve months preceding the hearing.  To the extent that the court failed to include these payments in mother's gross income, it erred.

Finding an error by the court does not end our inquiry, however.  When this Court finds that error has been committed by a trial court, we are required to consider whether the error was harmless.  "Code § 8.01-678 makes 'harmless error review required in *all* cases.'"  Tynes v.

- 13 -

Commonwealth, 49 Va. App. 17, 23 n.3, 635 S.E.2d 688, 690 n.3 (2006) (quoting Ferguson v.

Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990)). Code § 8.01-678 provides:

> When it plainly appears from the record and the evidence given at
> the trial that the parties have had a fair trial on the merits and
> substantial justice has been reached, no judgment shall be arrested
> or reversed . . . (2) For any other defect, imperfection, or omission
> in the record, or for any error committed on the trial.

This statute "'puts a *limitation on the powers* of this court to reverse the judgment of the trial

court—a limitation which we must consider on every application for an appeal and on the

hearing of *every case* submitted to our judgment.'" Kirby v. Commonwealth, 50 Va. App. 691,

699, 653 S.E.2d 600, 604 (2007) (quoting Walker v. Commonwealth, 144 Va. 648, 652, 131 S.E.

230, 231 (1926)).

Here, the court found in its letter opinion that mother's monthly income was $745 and

father's monthly income was $11,199, with no adjustment for spousal support. Nevertheless, the

court used as a basis for its award the Child Support Guideline Worksheet included in the joint

appendix at page 546. This worksheet adds to mother's income, and deducts from father's

income, the full spousal support obligation of $2830 per month. Based on this worksheet, the

presumptive amount of father's child support obligation was $1380. This is the amount the court

awarded. Therefore, any error in the court's statements was harmless because the court *actually*

calculated the presumptive child support amount by adjusting for the spousal support obligation,

just as father argued the court should do.[5]

---

[5] We note that if the court had calculated the child support obligation based on the income figures without adjustment for spousal support, as the letter opinion indicated, then father's obligation would have been substantially higher. Mother, however, did not assign cross-error to this calculation. We will therefore not address it here.

Father assigns error to the wording of the court's order setting certain conditions as part of a suspended sentence. The circuit court found father guilty of contempt pursuant to Code § 20-115 and sentenced him to a twelve-month jail sentence. The court suspended the sentence upon five enumerated conditions requiring father to pay his support obligations, arrearages, and delinquent attorney fee payments according to the schedule set forth in the December 23, 2014 order. The fifth condition stated:

> 5. Upon receipt of a sworn affidavit that any payments due are late or unpaid, or that Defendant failed to perform as set forth in these conditions, a cap[ias] shall issue and Defendant shall be remanded to the custody of the Sheriff of Rappahannock County, Virginia for service of his twelve month jail sentence.

Father argues that if mother submits an affidavit, the procedure provided by the order "would deprive father of his liberty without notice, or a hearing, or the opportunity to be represented by counsel."

Where a "court has suspended the execution or imposition of sentence, the court may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation." Code § 19.2-306(A). "Because a revocation proceeding is not 'a stage of criminal prosecution,' a probationer accused of violating the conditions of probation 'is not entitled to the same due process protections afforded a defendant in a criminal prosecution.'" Price v. Commonwealth, 51 Va. App. 443, 446, 658 S.E.2d 700, 702 (2008) (quoting Logan v. Commonwealth, 50 Va. App. 518, 525, 651 S.E.2d 403, 406 (2007)). A probationer, however, is entitled to certain minimum safeguards including notice and hearing. See id. at 446-47, 658 S.E.2d at 702 ( holding that minimum procedural safeguards include written notice of the claimed violations). Further, "'[s]ince the revocation of a suspension deprives the probationer of his liberty, he is entitled to a judicial hearing thereon.'" Griffin v. Cunningham, 205 Va. 349,

- 15 -

354, 136 S.E.2d 840, 844 (1964) (quoting Slayton v. Commonwealth, 185 Va. 357, 366, 38 S.E.2d 479, 483 (1946)).

This minimal safeguard of a hearing is clearly inferred from Code § 19.2-306, which establishes the procedure for revocation of suspended sentences. Section 19.2-306(B) instructs that a "court may not conduct a hearing to revoke the suspension of sentence unless the court . . . issues process to notify the accused or to compel his appearance before the court" within the prescribed time limit. The statute also provides that "[i]f the court, *after hearing*, finds good cause to believe that the defendant has violated the terms of suspension," then the court may revoke the suspension. Code § 19.2-306(C) (emphasis added). On the other hand, "[i]f any court has, *after hearing*, found no cause to . . . revoke a suspended sentence," then a subsequent revocation "based solely on the alleged violation for which the hearing was held, shall be barred." Code § 19.2-306(D). Thus, the statute clearly anticipates that when a defendant is accused of violating the terms of suspension, he will have notice of the violation and an opportunity for a hearing. Likewise, the statute anticipates that after an alleged violation of the terms of suspension, the court will have the opportunity to determine, *at a hearing*, whether there is "good cause to believe that the defendant has violated the terms of suspension." Code § 19.2-306(C). Additionally, in Peyton v. Commonwealth, 268 Va. 503, 511, 604 S.E.2d 17, 21 (2004), the Supreme Court held that there was a distinction between the willful failure of an inmate to comply with the conditions of his suspended sentence and a failure due to circumstances outside the inmate's control. The Court observed that "in either case the inmate *necessarily will be subjected to a show cause hearing*" at which the court may revoke the inmate's sentence. Id. (emphasis added).

Here, the fifth condition of suspended sentence stated that upon receipt of a sworn affidavit father would be arrested and be remanded to the custody of the sheriff for service of his

- 16 -

twelve-month jail term. The procedure given in the court's order did not provide an opportunity for a show cause hearing at which father could argue that he had not, in fact, violated the terms of suspension or that he had not done so willfully. The procedure given in the order deprived the court of the opportunity to determine at a hearing whether there was "good cause to believe that [father] ha[d] violated the terms of suspension," Code § 19.2-306(C), before revoking the suspension. We therefore hold that the court erred in including condition number 5 in its order; we accordingly vacate that portion of the order, which fails to provide father with notice and an opportunity to be heard prior to the circuit court deciding whether to revoke any portion of the suspended sentence.

## E. THE COURT DID NOT ABUSE ITS DISCRETION BY USING ACTUAL INCOME FIGURES AS A BASIS FOR DETERMINING MOTHER'S INCOME

Father argues the court erred by "ignoring [mother]'s admission that she tithes 10% of her income and the clear inference from her testimony that [mother's] annual income is $36,000."

The issue of a party's income is a question of fact that we will not disturb unless it is plainly wrong or without evidence to support it. Patel, 61 Va. App. at 727, 740 S.E.2d at 42. "'The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.'" McKee v. McKee, 52 Va. App. 482, 492, 664 S.E.2d 505, 510 (2008) (*en banc*) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)). Thus, "[o]n appeal, we will not reverse findings of fact 'unless plainly wrong.'" Budnick v. Budnick, 42 Va. App. 823, 834, 595 S.E.2d 50, 55 (2004).

We find father's assertion that the circuit court "minimize[ed]," "ignored" or "overlooked" the facts on this issue to be baseless. The circuit court directly addressed in its

- 17 -

letter opinion father's argument regarding mother's tithing and found it to be "without merit." Although mother testified that she believed she tithed $300 "[i]f it's 10 % of what [she] receive[s]," the court noted there was "no evidence to support [father's] argument that [mother] actually tithes $300.00 per month."[6] Instead of inferring income from mother's testimony, the court used actual income amounts from mother's employment. The court had "the opportunity to see and hear th[e] evidence as it [was] presented" and determine the "credibility of the witnesses and the weight [to be] accorded the evidence." See McKee, 52 Va. App. at 492, 664 S.E.2d at 510. Under our deferential standard of review, the court's use of actual income figures rather than use of mother's testimony to infer income was not plainly wrong or without evidence to support it. Thus we will not disturb the court's decision on appeal.

### F. THE COURT'S CALCULATION OF FATHER'S INCOME WAS NOT PLAINLY WRONG OR WITHOUT EVIDENCE TO SUPPORT IT

Father argues that the court erred "by adding all of [father's] income from [c]ourt-appointed counsel work to his deposits in determining his income[.]" The calculation of father's income is a question of fact, and we will not disturb the circuit court's judgment unless plainly wrong or without evidence to support it. Patel, 61 Va. App. at 727, 740 S.E.2d at 42.

During the hearing on father's motion to reduce child support, father introduced a list purporting to show voucher amounts paid to him by the Commonwealth over a period of several years. Father argued that the list included both garnished amounts and amounts that were already counted as income by way of deposits into his operating account. Although father argued that the circuit court could distinguish deposited amounts from garnished amounts by the presence of a check number next to the entry, the court was not required to credit father's

---

[6] Although mother testified that she remembered writing checks for $300, she did not testify that she did so every month. Further, father's Exhibit 7 included seven checks dated within the year prior to the September 24, 2014 hearing. Only one of those checks equaled or exceeded $300.

unsubstantiated testimony as to the meaning of the documents. The court questioned the parties at length regarding the deposits reflected on father's bank statements.

Simply put, father disagrees with the court's factual finding regarding his income in light of the court's interpretation of the documentary evidence and the weight given testimony presented at trial. "[W]hen a court hears evidence at an *ore tenus* hearing, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Goodhand v. Kildoo, 37 Va. App. 591, 599, 560 S.E.2d 463, 466 (2002). The circuit court had before it all of father's evidence and heard father testify. The court was not required to credit father's evidence or testimony. Father's income is a finding of fact that we will not disturb unless father points us to legal authority and argument demonstrating that the circuit court was plainly wrong. Patel, 61 Va. App. at 727, 740 S.E.2d at 42. Father has failed to do so. We will therefore leave the court's factual finding undisturbed.

G. ASSIGNMENT OF ERROR DEFAULTED BY 5A:18

Rule 5A:18 states:

> No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to preserve the issue for appellate review.

"The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals. In addition, a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding." Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991) (citation omitted). Furthermore, "we will not consider a different ground of objection raised for the first time on appeal[.]" O'Dell v. Commonwealth,

- 19 -

234 Va. 672, 679, 364 S.E.2d 491, 495 (1988) (citing Rule 5:25, the Supreme Court's equivalent of this Court's Rule 5A:18).

Father argues that the court erred in "failing to determine [father's] income at the time of the filing of his Motion to Reduce Child Support, June 29, 2012, instead making a finding of [father's] 2014 income, a time not in existence when [father] filed his Motion to Reduce Child Support." He did not make this argument to the circuit court. Rather, father argued to the court that his 2012 tax return was the best estimation of his current (2014) income because it was the most recently *filed* return. Because the circuit court did not have an opportunity to rule on the argument that 2012 was a more appropriate year because it was the year in which the motion was filed, we will not address that assignment of error.[7]

## H. ASSIGNMENTS DEFAULTED BY RULE 5A:20

"Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.' Unsupported assertions of error 'do not merit appellate consideration.'" Fadness, 52 Va. App. at 850, 667 S.E.2d at 865 (alteration in original) (quoting Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008)). An appellate court "is not a depository in which the appellant may dump the burden of argument and research." Id. "[S]trict compliance with the rules permits a reviewing court to ascertain the integrity of the parties' assertions which is essential to an accurate determination of the issues raised on appeal." Id. (quoting Jones, 51 Va. App. at 734-35, 660 S.E.2d at 345). Accordingly, when a party's failure to strictly adhere to the requirements of Rule 5A:20(e) is significant, this Court may treat the assignment of error as waived. Id.

---

[7] The court stated that it found no reason to rely on father's 2012 tax return "for a determination of his current income." Modified child support payments were prospective only, commencing on December 31, 2014.

Father argues that the circuit court erred by concluding "that [father's] average monthly income for the months of August through December 2014 would be the same as his average monthly income for January through July 2014." Father cites Srinivasan v. Srinivasan, 10 Va. App. 728, 735, 396 S.E.2d 675, 679 (1990), for the principle that "current circumstances and what the circumstances will be 'within the immediate or reasonably foreseeable future'" must be the basis of support awards. But Father cites no principle of law, legal argument, or authority relating to his contention that the circuit court used an incorrect method of determining his current annual income when it calculated an average. Here, father's failure to provide "[t]he principles of law, the argument, and the authorities," for this assignment of error is significant, and we deem the argument waived. See Rule 5A:20.

Father additionally argues that the circuit court

> committed plain error in finding that [father's] own Certified Public Account ("CPA"), a man's testimony[,] rebutted [father's] testimony regarding his 2012 income, because the evidence was clear that only [father's] bookkeeper—who is neither a CPA, nor a man—testified, and the record shows that [mother], not [father] called the bookkeeper as a witness.

In its letter opinion, the court refers to the witness as "he," as a Certified Public Accountant, and as father's witness. Each of these characterizations conflicts with the record. Father does not challenge the testimony of the witness, only the faulty description of the witness by the court. Father fails to provide "[t]he principles of law, the argument, and the authorities" explaining why the court's faulty description of the witness makes the court's finding regarding father's income incorrect. He failed to provide meritorious argument that the errors were more than harmless misspeak. See Code § 8.01-678; see also Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977) ("Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the

facts. Furthermore, we will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied."). We therefore consider this assignment of error waived. <u>See</u> Rule 5A:20(e).

## III. CONCLUSION

We conclude that the circuit court erred in ordering that husband's suspended jail sentence for contempt would be automatically revoked if husband failed to make future payments, without providing husband notice and an opportunity to be heard. Accordingly, we reverse and vacate condition number 5 of the final order. We affirm the circuit court's factual findings of mother's income and father's income. Based on those findings, we hold that the court did not err in determining father's child support obligations. We therefore affirm the remainder of the circuit court's ruling.

<u>Affirmed in part, reversed and vacated in part.</u>