# COURT OF APPEALS OF VIRGINIA

---

**Record No. 2072-24-4**

---

FARZIN YAZDANI

v.

MELODY YAZDANI

---

Present: Judges Friedman, Chaney and Duffan

Argued at Fredericksburg, Virginia

Opinion Issued May 26, 2026[*]

---

**FROM THE CIRCUIT COURT OF FAIRFAX COUNTY**
Jonathan D. Frieden, Judge

Fred M. Rejali for appellant.

Kristen L. Kugel (Cooper Ginsberg Gray, PLLC, on brief), for appellee.

---

**MEMORANDUM OPINION BY
JUDGE FRANK K. FRIEDMAN**

This appeal arises from cross-petitions to modify child custody. By letter opinion, the circuit court granted Melody Yazdani (Mother) sole legal and physical custody. The circuit court required Farzin Yazdani (Father) to complete a mental health assessment to help determine the terms of visitation and reunification of Father with the children. The circuit court then set the matter for a compliance review scheduled several months after the order—and, presumably, after Father completed the evaluation. Father, however, refused to undergo the evaluation. Father now appeals the order determining custody.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Father appealed the ruling of the Fairfax Juvenile and Domestic Relations District Court which granted Mother's petition to modify custody. The parties have three minor children, A.Y.,[2] born November 4, 2006, N.Y., born November 13, 2008, and K.Y., born September 23, 2010. The controlling custody and visitation order at the time Father initiated this proceeding in the circuit court was the consent custody modification order entered by the Fairfax County Juvenile and Domestic Relations District Court on August 16, 2022. That consent custody modification order required Father to submit to a mental health assessment, conducted by a psychologist licensed to practice in the Commonwealth of Virginia, for the purpose of evaluating his mental health and parenting capacity. Indeed, in the juvenile and domestic relations court, Father agreed to the mental evaluation set forth in the order.

The circuit court proceedings were set for trial on June 11, 2024, and June 12, 2024. Following testimony and evidence presented on those dates, the court entered an order on June 12, 2024, continuing the matter to August 9, 2024, thereby giving the parties an opportunity to respond to the *in camera* interviews of the parties' children conducted during the trial. That continuance order also required Mr. Yazdani to come into compliance with the consent custody modification order by promptly "completing a mental health assessment to be performed by a psychologist licensed to practice in the Commonwealth of Virginia, for the purpose of evaluating his mental health and parental capacity." Father, however, never obtained the evaluation.

---

[1] Under familiar appellate principles, we recite the facts in the light most favorable to the prevailing party below. *Nichols Constr. Corp. v. Va. Mach. Tool Co., LLC*, 276 Va. 81, 84 (2008) (citing *Davis v. Holsten*, 270 Va. 389, 398 (2005)).

[2] Initials are used to protect the identities of the children. A.Y. was a minor during these proceedings but has now attained adult status.

Following the hearing on August 9, 2024, the circuit court issued a Memorandum of Opinion on September 24, 2024. The September opinion letter observed that Father, in dealing with his children, refused to take any accountability for his actions. It also found his conduct was often abusive. For example, after not seeing A.Y. for almost four years, Father chose to speak to her about her sex life, rather than ask about how she was doing. When A.Y. tried to express to Father how it made her feel uncomfortable and how she wanted him to seek help, he told her, "I am your father and have a right to know and provide you with guidance. You don't respect or obey me[,] nor do you want to see me again so I think it's best that we stay away from each[ ]other as long as you think and feel this way about your dad." Father proceeded to tell A.Y. that she is very mentally ill, told her to try and not be a 304,[3] that his children are emotionally weak, that her mental health and general state were a result of Mother's failed parenting, and that A.Y. is a liar. Father's contact with N.Y. and K.Y. also was deemed to be problematic and disruptive.

Father was clear at trial that he does not believe in the use of psychiatric medications or therapy. The trial court's memorandum opinion notes that the requirement for Father to complete a mental health assessment was enacted for the benefit of the children, to serve their best interests and to enable them to reunify with him. The circuit court found that Father demonstrated an inability or unwillingness to accurately assess and meet the needs of the minor children that has resulted in a deterioration of his relationship with them.

The court set the matter for a compliance review on January 10, 2025 and stated in the opinion letter:

- Mother is granted sole legal and physical custody of the Children.

- Father is granted no parenting time with any of the Children, except as expressly set forth hereinafter;

---

[3] 304 is a numerical reference to the word "hoe" or slang for a female prostitute.

- No later than December 1, 2025, Father must complete a mental health evaluation, which includes Minnesota Multiphasic Personality Inventory-2 (MMPI-2) testing. No prior mental health assessment will satisfy this requirement. Father is solely responsible for the cost of the evaluation;

- Father must promptly commence, and successful[ly] complete, all recommended mental health treatment. Father is solely responsible for the cost of such treatment;

- Once Father has completed three months of mental health treatment, as confirmed by the treatment provider, the parties must select a reunification therapist to provide reunification therapy for the parties . . . . If the parties cannot agree on a provider within 30 days after Father completes three months of mental health treatment, Father must provide to Mother a list of three qualified reunification therapists within 15 days thereafter and Mother must make her selection of the reunification therapist within 15 days thereafter. Each party must pay half the cost of reunification therapy;

- Father may call and text the Children at all reasonable times. Each Child may communicate with Father in the same way, at all reasonable times, but may refuse to do so. Mother must not influence the Children to refuse communication with Father;

- Father must not go to the Children's home or school(s).[4]

After the September opinion letter, Father filed a motion for reconsideration which was denied by the circuit court on November 15, 2024. In the order denying the motion for reconsideration, the court once again stated that the matter was continued to January 10, 2025, for the purpose of compliance. The November 15 order stated that the custody and visitation order entered in this matter was a final and appealable order. The custody and visitation order also stated that the review hearing on January 10, 2025, was for review of the parties' compliance.

---

[4] "Although parts of the record are sealed, this appeal requires unsealing certain portions to resolve the issues raised by [the appellant]. To the extent that certain facts are found in the sealed portions of the record, we unseal those portions only as to those specific facts mentioned in this opinion." *Khine v. Commonwealth*, 75 Va. App. 435, 442 n.1 (2002). "The rest remains sealed." *Id.*

At the hearing on January 10, 2025, it apparently came to light that the order memorializing the September opinion was never entered. Accordingly, the findings and rulings in the memorandum opinion were incorporated into the custody and visitation order entered January 10, 2025, nunc pro tunc to November 15, 2024 (the date the motion for reconsideration had been denied).

Father now challenges the finality of the order and disputes the trial court's authority to require him to undergo a mental evaluation.

## ANALYSIS

### A. Standard of Review

"We begin our analysis by recognizing the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness." *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019) (quoting *Stiles v. Stiles*, 48 Va. App. 449, 453 (2006)). "In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." *Id.* at 193 (quoting *Bedell v. Price*, 70 Va. App. 497, 504 (2019)). "[A]bsent clear evidence to the contrary in the record," we presume that the trial court correctly applied the law. *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022) (quoting *Milam v. Milam*, 65 Va. App. 439, 466 (2015)). With regard to factual issues, we place great weight on the trial court's decision and will not disturb it "unless plainly wrong or without evidence to support it." *Id.* "[T]his deferential standard of review 'rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.'" *Id.* (quoting *Wynnycky*, 71 Va. App. at 193). However, the question of whether we have jurisdiction is a question of law reviewed de novo. *Watwood v. Commonwealth*, 79 Va. App. 751, 755 (2024).

B. Whether this Court has Subject Matter Jurisdiction

Father asserts the following assignments of error:

1) The trial court erred, as a matter of law, when it entered a Final Custody Order which by its own terms placed the matter for review and which clearly did not adjudicate the custody and visitation issue between the parties fully.

2) The trial court erred, as a matter of law, when it entered an order requiring [Father] to submit to a psychological evaluation where this is not in accordance to . . . determination of custody but as an apparent requirement (subsequent to the court granting custody to [Mother]).

In essence, Father argues that the controlling order was not a final order because it did not fully adjudicate the custody and visitation issues below—but instead was subject to, and contingent upon, the mental evaluation and future rulings. Alternatively, he posits, if the order was final, then the court lacks the authority to compel him to endure a medical evaluation after the fact when custody was already decided.[5]

"The Court of Appeals of Virginia is a court of limited jurisdiction." *de Haan v. de Haan*, 54 Va. App. 428, 436 (2009) (quoting *Canova Elec. Contracting, Inc. v. LMI Ins. Co.*, 22 Va. App. 595, 599 (1996)). This Court possesses "subject matter jurisdiction over only those classes of cases specified by statute." *Id.* "Code § 17.1-405 provides this Court with jurisdiction over 'any *final*

---

[5] While we understand the reasoning behind Father's position that if custody and visitation were decided, then a "forced" mental evaluation was no longer permissible under the governing statutes, we disagree. Here, in the first place, Father agreed to the evaluation in the juvenile and domestic relations proceeding and there was a valid order to that effect which Father has declined to follow. Courts have the ability to uphold and enforce their orders. *See Winters v. Winters*, 73 Va. App. 581, 590-91 (2021); *see also* Code §§ 20-124.2 (E), 16.1-278.15. Moreover, Father fails to address that visitation and contact issues were based on Father's ability to have a non-detrimental impact on the children. The court was requiring the evaluation to ensure the best interest of the children; the record was replete with evidence of negative contacts between Father and the children. The existing order permitted Father to have phone contact essentially without limitation—but it was premised on Father not causing harm or initiating detrimental contact. Clearly, in this setting, the circuit court could determine that calling for a mental evaluation was relevant to analyze the phone contact provisions and further reunification efforts to ensure that these terms were in the best interest of the children.

judgment, order, or decree of a circuit court involving . . . divorce; spousal or child support; [and] any interlocutory decree . . . entered in [such] cases . . . adjudicating the principles of a cause.'" *Friedman v. Smith*, 68 Va. App. 529, 538 (2018) (alterations in original) (emphasis omitted) (quoting Code § 17.1-405(3)(b), (3)(d), (4)).

An order is considered final for purposes of appeal if it disposes of the entire matter before the court including all claims and causes of action against all parties, provides all the relief contemplated, and leaves nothing to be done except the ministerial execution of the court's judgment. *Commonwealth v. McBride*, 302 Va. 443, 451 (2023); Rule 1:1(b).

Case law confirms that an order retaining jurisdiction to mold or alter the judgment or address pending matters is interlocutory rather than final. *See Friedman*, 68 Va. App. at 538 ("[A]n order that 'retains jurisdiction to reconsider the judgment or to address other matters still pending' is ordinarily not a final order." (quoting *Super Fresh Food Mkts. of Va., Inc. v. Ruffin*, 263 Va. 555, 561 (2002))). The law is clear that a "'decree which leaves anything in the cause to be done by the court is interlocutory,' rather than final, in nature." *Prizzia v. Prizzia*, 45 Va. App. 280, 285 (2005) (quoting *Dearing v. Walter*, 175 Va. 555, 561 (1940)).

In the context of child custody, a final order conclusively resolves the issues of custody and visitation, subject to modification only upon a showing of material change in circumstances and proof that the modification is in the best interests of the child. *See* Code § 20-108 (granting circuit courts jurisdiction to revise custody orders as circumstances and the welfare of the child require where a motion or petition has been filed to reopen the case before the circuit court). In cases involving child custody, "[i]f 'further action of the court in the cause is necessary to give completely the relief contemplated by the court, the decree is not final but interlocutory.'" *Shetzline v.*

*Shetzline*, No. 0345-11-4, slip op. at 3, 2012 Va. App. LEXIS 50, at *4 (Feb. 21, 2012) (quoting

*Brooks v. Roanoke Cnty. Sanitation Auth.*, 201 Va. 934, 936 (1960)).[6]

For example, in *Tahayya A.M. Ansari v. Saeed Ahmad*, No. 1380-08-2, slip op. at 2-3, 2009 Va. App. LEXIS 61, at *2-3 (Feb. 10, 2009), this Court found that where the circuit court ordered mother and father to actively participate in therapy with a court-appointed therapist, required the parties to report to the court quarterly, and set a review hearing for a specific date, that there was no final order, and instead the court's order was interlocutory. A final order in a child custody modification proceeding must fully resolve the custody and visitation issues, leaving no further judicial action except for enforcement.

Here, we agree with Father's position that the order appealed from is not final. As we read the record, the court had not fully resolved the rulings relating to visitation and Father's contact with the children in November 2024. In the opinion, Father was granted no parenting time "except as expressly set forth" in the terms of the opinion which included the mental evaluation. Although Father refused to undergo the evaluation, text and phone contact was on-going. This tension was never formally resolved: although the nunc pro tunc order seems to allow for phone and texting contact, it was subject to Father receiving a mental evaluation. The January hearing offered an opportunity to resolve visitation and other contact issues with the aid of the mental health evaluation—but the evaluation never occurred. If the anticipated mental health review had concluded that texting without restriction was harmful to the children, the circuit court still had the authority to modify those terms since Father's permission to text was expressly conditioned upon adherence to the terms of the order. Similarly, had Father complied with the order and sought an evaluation, the evaluation could have led to the conclusion that reunification was immediately

---

[6] "Unpublished opinions of this Court, while having no precedential value, are nevertheless persuasive authority." *Otey v. Commonwealth*, 71 Va. App. 792, 799 n.3 (2020) (quoting *Samartino v. Fairfax Cnty. Fire and Rescue*, 64 Va. App. 499, 508 n.2 (2015)).

appropriate—but it could also have reached the opposite determination.[7]  So the reunification therapy issue was likewise unsettled in November 2024.

We are left with the order entered January 10, 2025, nunc pro tunc to November 15, 2024, and the November order denying Father's motion for reconsideration.  The November order states that it is intended as a final order—but it leaves the same unresolved visitation issues that were to be addressed with the aid of the mental health evaluation.  Father's texting and telephone contact was conditioned upon receiving a mental evaluation.  Issues of telephone contact and reunification are not fully resolved in the absence of the information on Father's mental status.  Put another way, there is no ruling defining the terms of Father's phone contact with the children that is not conditioned upon the required mental evaluation.

In sum, the orders appealed from did not dispose of all issues.  To the contrary, the rulings remained contingent upon the outcome of the mental evaluation.  Visitation contact, texting restrictions, and reunification determinations were not "fully resolved" when the parties reconvened on January 10, 2025.  If valuable information had been received from the much-anticipated mental evaluation at the January hearing, the circuit court would have been powerless to address the results of the evaluation if the order had been final in November.  Not only would this hamstring the circuit court in ruling in the best interest of the children, but this Court would have been left to decide phone contact and reunification issues piecemeal before the circuit court had ever fully resolved them.[8]

---

[7] Our review of what actually transpired on January 10 is further hampered by the fact that there is no transcript of the proceedings in the record.

[8] The fact that the circuit court deemed its November 15 order final is not controlling. *See de Haan*, 54 Va. App at 438; *Est. of Hackler v. Hackler*, 44 Va. App. 426, 431 (2004).  The order simply did not leave "nothing to be done" in the case.

The record in this case is admittedly unusual and challenging. However, we conclude that as long as Father's parenting time is limited by express conditions, and those conditions have not yet been satisfied, the resolution of phone contact and reunification is non-final.[9] Accordingly, this appeal is from a non-final order, and we lack jurisdiction to hear the appeal.

CONCLUSION

For the foregoing reasons, we find that we lack subject matter jurisdiction and the appeal is dismissed.

*Dismissed.*

---

[9] If Father refuses to submit to a mental evaluation, a final order can be crafted that is not conditioned upon the mental evaluation and which resolves visitation/phone contact and reunification efforts without leaving Father's "parenting time" contingent on the evaluation.