COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Ortiz, Raphael and White
Argued by videoconference


FRANKLIN D. MCLAWHORN
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0102-24-1          JUDGE KIMBERLEY SLAYTON WHITE
                                                          APRIL 15, 2025
KATE NICHOLS


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge

Charles E. Haden for appellant.

Kenneth B. Murov (Z. Aliye Kidwell; Murov & Kidwell, on brief),
for appellee.


Appellant McLawhorn contests the trial court's rulings establishing his child support

obligation to his daughter, whose mother is appellee Nichols.  The trial court sanctioned

McLawhorn for delivering discovery materials after the deadline set by an order of the court.  The

sanction precluded McLawhorn from presenting evidence of his income.  Accordingly, he relied on

his tax returns, introduced into evidence by Nichols, to prove his reasonable business expenses,

which Code § 20-108.2(C) requires to be deducted from his overall income.

The trial court ruled that McLawhorn failed to prove his business expenses.  McLawhorn

argues that the court had to view the expenses listed on his tax returns as "reasonable business

expenses" and erred by not deducting them from his income.  But we find evidentiary support for

the trial court's determination that McLawhorn failed to prove that the expenses listed on his tax

returns were reasonable expenses under Code § 20-108.2(C).  Thus, we affirm the judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

In July 2017, a petition for child support was filed in the Newport News Juvenile and Domestic Relations District ("JDR") Court on behalf of Kate Nichols, requesting support from Franklin McLawhorn for the parties' biological child, born July 2015. McLawhorn is a real estate salesperson and licensed broker in his mid-forties who receives income through commissions from selling real estate.

The JDR court entered its final child support order in May 2022. The final order required McLawhorn to pay $189 per month and determined that McLawhorn owed $4,669 in arrearages from August 1, 2017, the effective date of his child support obligation.

Nichols appealed the JDR court's child support order to the circuit court. While the appeal was pending, the JDR court entered a final custody order awarding sole custody to Nichols and no parenting time or contact for McLawhorn.

Discovery commenced. Counsel for Nichols sent interrogatories and requests for the production of documents to McLawhorn's counsel on March 20, 2023. Having received no reply, Nichols filed a motion to compel asking the court to order McLawhorn to respond to the interrogatories and requests for production of documents, to hold him in contempt, and for attorney fees.

The trial court held a hearing on Nichols's motion to compel. The court found that eight interrogatories and requests were deficient and had to be supplemented, including one request that asked for additional tax forms from McLawhorn. The court granted the motion in part and ordered McLawhorn to provide his supplemental responses by July 24. But McLawhorn did not provide the required supplemental documents to Nichols's counsel until July 28.

Nichols filed a motion for sanctions on July 26 for McLawhorn's failure to comply with the court's order. Nichols asked that, pursuant to Rule 4:12(b)(2)(B), McLawhorn "be precluded

from offering any claims or defenses to" (a) Nichols's "presentation of either party's income" and (b) her "presentation of any applicable child support guidelines."

The trial court held a hearing on the motion for sanctions. In an order, the court granted the Rule 4:12 preclusion sanctions requested by Nichols preventing McLawhorn from offering claims or defenses to Nichols's "presentation of either party's income" or "any applicable child support guidelines" during the trial. He does not assign error to the sanction order and so has waived his right to challenge it on appeal.[1]

## A. Child Support Trial

Only Nichols presented evidence at the child support trial. Her first witness was Grace Ann McDaniel, an experienced accountant who had prepared and filed McLawhorn's tax returns for 2017 through 2021 and had almost finished preparing his 2022 tax return. McDaniel authenticated McLawhorn's 2017-2021 tax returns, which were admitted into evidence by Nichols.

---

[1] We note that McLawhorn's Assignments of Error 1 and 6 allude to the sanction order. Assignment of Error 1 asserts that the trial court erred by holding that McLawhorn failed to prove his business expenses "while also denying McLawhorn the opportunity to present evidence regarding the business expenses" due to the sanction order. Assignment of Error 6 asserts that the trial court's "decision regarding the child support guidelines" was error in part because "McLawhorn was improperly prevented from presenting evidence on his own behalf." Despite obliquely referring to the sanction order in these two assignments of error, we find that McLawhorn waived the issue by failing to support or even make an argument against the order in the body of his brief.

"Simply put, '[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (quoting *Sneed v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)). A "failure to provide legal argument and authority as required by Rule 5A:20(e) leaves us without a legal prism through which to view [an] alleged error and, therefore, is significant; accordingly, we deem [such an] assignment of error waived." *Id*. Here, McLawhorn does not cite to Rule 4:12 or discuss any legal authority that might have shown the sanction order to be an abuse of discretion. He does not even provide a "skeletal argument" explaining that the order was improper at all. Thus, we find that he has waived any challenge to the order.

On cross-examination, McLawhorn tried to reinforce McDaniel's credibility as preparer of the tax returns. McDaniel stated that she filled out the tax returns using McLawhorn's bank statements, "properly prepare[d]" the returns, "followed correct IRS procedures," and verified the information using receipts. In addition to bolstering McDaniel's credibility, McLawhorn tried to "la[y] out the sources and amounts of [his] income" by pointing to specific items in the returns that allegedly show his income. McLawhorn addressed particular entries on the tax returns, comparing total business losses and total profits with an eye to independently validating each return's net income figure. These net income figures identified and briefly discussed on cross-examination are the numbers that McLawhorn argues should be used in place of the incomes assigned by the trial court.

Nichols's second witness was McLawhorn. He testified that he fully owned Frank McLawhorn, LLC, until July 2022, the business entity that received the commission income that McLawhorn derived from selling real estate. But he admitted that he had sold 51% of the business to his mother in 2022 shortly after the JDR hearing. He sold it to his mother for only $6,000 despite the LLC producing nearly $80,000 annually in gross income. The trial court viewed this sale as "an attempt to reduce his income and impute a lower child support obligation to himself." The trial court found that McLawhorn was also "evasive" about a $130,000 capital contribution received by a trust he owned in 2022 from the sale of his ownership interest in Keller Williams Realty. To the court, McLawhorn's testimony showed that he "went to great lengths to hide various forms of his income."

Nichols's third and final witness was Nichols herself. She testified to the authenticity of her own tax returns for 2017 to 2022, prepared by her tax preparer Mr. Tucker. Her tax returns were also admitted as exhibits.

- 4 -

The trial court ordered post-trial briefs from the parties. Nichols's post-trial brief laid out how she believed McLawhorn's income should be calculated.

## B. Final Order

The trial court entered its child support order on December 22, 2023. McLawhorn submitted written objections to the final order. He raises seven assignments of error on appeal.

### 1. Reasonable Business Expenses

Relevant to Assignments of Error 1, 2, and 3 is the court's ruling on McLawhorn's reasonable business expenses. McLawhorn argued that the court was "bound" by McDaniel's "uncontradicted" testimony establishing reasonable business expenses that must be deducted from his gross income under Code § 20-108.2(C). But Nichols argued that the sanction order precluded McLawhorn from "presenting any evidence relating to reasonable business expenses." Thus, he failed to meet his statutory burden of proving "such expenses" or that they were "reasonable."

The court ruled for Nichols. It held that the sanction order's Rule 4:12 preclusions "necessarily govern[] [McLawhorn's] ability to present claims or defenses on this issue." The sanction order preluded McLawhorn from "making any claims or raising any defenses to the evidence that [Nichols] presented regarding [McLawhorn's] income." This prohibition extended to any claim by McLawhorn that "he is entitled to a deduction from his gross income for any reasonable business expenses that he may have incurred for the relevant tax years." The court relied on two unpublished Court of Appeals cases to hold that McLawhorn could not "use the tax returns that [Nichols] presented to prove his reasonable expenses because it was [his] burden to prove that the expenses noted on [Nichols's exhibits] were, in fact, reasonable business expenses." Having "provided *no* supporting documentation of business expenses," McLawhorn failed to prove his entitlement to have any of his expenses reflected on the tax returns deducted

from his gross income. Thus, the court did "not consider th[o]se expenses for purposes of calculating [his] gross income for [the] child support guidelines."

### 2. *McLawhorn's Income*

Relevant to Assignments of Error 4 and 5 is the court's ruling on McLawhorn's income. The court only considered McLawhorn's income "over a five-year period from 2017 to 2021" because he "failed to provide [it] [with] proof of his income for tax years 2022 or 2023."

Using his 2017-2021 tax returns, the court determined McLawhorn's annual income from each of six income-producing entities.[2] The court then added up each entity's annual average to reach $428,475.80, McLawhorn's "average yearly gross income." Lastly, the court divided this number by 12. The result was $35,706.31, McLawhorn's average monthly gross income. The court used this number to compute the presumptive guideline child support amount.

McLawhorn assigns error to the income figures that the court assigned to him. He asserts that McDaniel's testimony on his tax returns, uncontradicted by the other witnesses, established different yearly incomes than those reached by the court. Assignment of Error 4 argues that McDaniel's testimony on cross-examination established that McLawhorn's income for each year was a certain number written on the tax returns. McLawhorn asserts that, absent contrary evidence, his income for each year *must be* the net or taxable income on that year's tax return. Hence, where the trial court combined the six entities' income to determine a given year's total income, McLawhorn points to a single figure on each tax return as definitively representing a given year's total income.

---

[2] (1) FrankMcLawhorncom, LLC; (2) AFD Management, LLC; (3) Pinnacle Management Property Group; (4) income from farm property in North Carolina; (5) Omni Title and Escrow, LLC; and (6) Peninsula LLC Keller Williams Realty in Newport News.
    Entity five "was dissolved in 2020," and a new entity called Omni Original 7 was formed "which consists of [McLawhorn] and some of the original partners" of entity five.

Assignment of Error 5 asserts that the trial court's determinations of McLawhorn's annual incomes are "contrary" to McDaniel's testimony and the tax returns and thus are "not supported by the testimony or by the evidence and do not represent income to McLawhorn."

### 3. Child Support Guidelines

Relevant to Assignments of Error 6 and 7 is the court's ruling on the amount of child support calculated under the statutory guidelines. The trial court proceeded under Code § 20-108.2. It combined McLawhorn and Nichols's average monthly gross incomes and determined the presumptive child support total for their one child to be $2,047. The court decided not to deviate from this presumptive amount and ordered McLawhorn to pay $1,800 per month in child support. McLawhorn does not contest the court's holding that the child support obligation applies retroactively to August 2017.

The court also wrote that McLawhorn had "failed to comply with" its order and had "acted in complete disregard of this Court ordering him to cure discovery deficiencies." It found that the 51% sale of his LLC to his mother was a windfall and that McLawhorn was evasive about the capital contribution from Keller Williams. Concluding that McLawhorn went to "great lengths" to hide his income and "created additional and otherwise unnecessary work by refusing to comply with discovery," the court awarded further attorney fees to Nichols.

Assignment of Error 6 asserts that by incorrectly determining McLawhorn's income, the trial court's decision on his amount of child support is error too. Assignment of Error 7 is general, stating that the court's finding on McLawhorn's income and amount of child support was plainly wrong and an abuse of discretion.

ANALYSIS

A. Reasonable Business Expenses

"The starting point for a trial court in determining the monthly child support obligation of a party is the amount as computed by the schedule found in Code § 20-108.2." *Tidwell v. Late*, 67 Va. App. 668, 679 (2017) (quoting *Richardson v. Richardson*, 12 Va. App. 18, 21 (1991)). The schedule in Code § 20-108.2 identifies a presumptive amount of child support based on the parents' "combined monthly gross income." Code § 20-108.2(A), (B). Gross income means "all income from all sources" and includes "salaries, wages, commissions, royalties, bonuses, dividends, . . . interest, trust income, . . . capital gains, [and] rental income." Code § 20-108.2(C).

Gross income "shall be subject to deduction of reasonable business expenses for persons with income from self-employment, a partnership, or a closely held business." *Id.* But "[t]he party claiming any deduction for reasonable business expenses . . . shall have the burden of proof to establish such expenses by a preponderance of the evidence." *Id.*

Here, the trial court relied on an unpublished decision of the Court of Appeals, *Eisert v. Eisert*, No. 2990-06-4, 2008 Va. App. LEXIS 134 (Mar. 18, 2008), to hold that McLawhorn was "not entitled to use the tax returns" presented by Nichols to prove that "the expenses noted" on the returns "were, in fact, reasonable business expenses."[3] Having presented "*no* supporting documentation of business expenses" due to the sanction order, he did not meet his burden of proving his entitlement to the deduction of any business expenses from his gross income.

---

[3] In *Eisert*, mother introduced into evidence copies of father's checks "evidencing [his] business expenses." Slip op. at 9, 2008 Va. App. LEXIS 134, at *14. Father argued that "there was no need for [him] to provide additional testimony concerning such expenses because documents speak for themselves." *Id.* at 9, 2008 Va. App. LEXIS 134, at *14-15. But this Court disagreed, stating that "it was [father's] burden" to prove that "those expenditures were, in fact, reasonable business expenses." *Id.* at 9, 2008 Va. App. LEXIS 134, at *15.

McLawhorn replies that his tax returns, introduced into evidence by Nichols, "set[] forth an accounting of his reasonable business expenses." He argues that the trial court had no choice but to accept McDaniel's uncontradicted testimony on cross-examination that, he alleges, establishes his reasonable business expenses. McLawhorn asserts that the trial court thus abused its discretion by failing to deduct these expenses from his income and ran afoul of Code § 20-108.2(C).

We disagree. Viewed under our standard of review, the facts of the case control the outcome of this issue. Code § 20-108.2(C) requires reasonable business expenses to be deducted from gross income only if the party seeking the deduction carries its burden of proof to "establish such expenses by a preponderance of the evidence." McLawhorn was precluded from putting on evidence of his expenses by the sanction order, to which he has waived any challenge. Yet he argues that the tax returns introduced by Nichols required the trial court to find that he had met his burden of proof simply because certain expenses were written on the returns.

We are not persuaded. As a statutory matter, Code § 20-108.2(C) does not mandate that an expense written on a federal tax return must be considered a "reasonable business expense." Instead, the statute leaves the determination of whether a proponent has successfully proven his expense to be reasonable, and therefore deductible, to the factfinder. And as a factual matter, we may only overturn the trial court's determination that McLawhorn did not meet his burden of proof if that determination is plainly wrong or without evidence to support it. *See Milam v. Milam*, 65 Va. App. 439, 462 (2015) ("The issue of a party's income is a question of fact that we will not disturb unless it is plainly wrong or without evidence to support it.").

We find more than enough support in the record to uphold the trial court's determination. McLawhorn's assertion that the tax returns introduced by Nichols provide clear and uncontradicted proof establishing the expenses listed on them to be "reasonable" under Code

§ 20-108.2(C) is conclusory. As in *Eisert*, the trial court was not required to find that the expenses on McLawhorn's tax returns were reasonable, given the lack of supporting documents or corroborating testimony caused by the sanction order. McLawhorn did not provide any evidence of his own to establish that the expenditures written on the tax returns fall under Code § 20-108.2(C). His cross-examination of McDaniel, who prepared the returns, did not "provide" the court with any documentation supporting his assertion that the expenses he discussed with McDaniel were reasonable. Thus, it is irrelevant that McDaniel's testimony was uncontradicted because it did not establish in the first instance what McLawhorn asserts it did—proof of reasonable business expenses.

We do not hold that a party seeking reasonable business expense deductions must always provide separate corroborating documentation or that a tax return is insufficient proof, but only that the trial court was entitled to assess the reliability of the evidence presented in light of the circumstances of the case. McLawhorn presented no evidence of his business expenses, and his cross-examination of McDaniel does not compel a finding that Nichols's evidence established such expenses. Accordingly, we find no error in the trial court's ruling that McLawhorn failed to prove his reasonable business expenses by a preponderance of the evidence.

## B. McLawhorn's Income and Child Support Amount

"The determination of child support is a matter of discretion for the circuit court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." *Niblett v. Niblett*, 65 Va. App. 616, 624 (2015) (quoting *Oley v. Branch*, 63 Va. App. 681, 699 (2014)). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Milam*, 65 Va. App. at 462 (quoting *McKee v. McKee*, 52 Va. App. 482, 492 (2008) (en banc)). Additionally, the "issue of a party's income" is a question of fact that we will not

reverse on appeal unless plainly wrong. *Da'mes v. Da'mes*, 74 Va. App. 138, 145 (2022) (quoting *Milam*, 65 Va. App. at 462). But whether certain categories of income are included in the definition of "gross income" under Code § 20-108.2(C) is a question of law that we review de novo. *See id.* (quoting *Cleary v. Cleary*, 63 Va. App. 364, 369 (2014)).

McLawhorn argues that the trial court's determination of his income is error for two reasons. First, he argues that McDaniel's testimony on his tax returns established his "total income" for each year, which the trial court erroneously disregarded. Second, he argues that "the trial court assigned amounts as gross income" that are unsupported by the evidence and "do not represent income to McLawhorn."

The trial court calculated McLawhorn's yearly incomes for 2017 to 2021 by separately determining the yearly incomes of the six income-producing entities. Each entity was discussed at trial and appeared on Nichols's exhibits. Thus, there is evidence to support the trial court's six-entity approach to calculating McLawhorn's income. McLawhorn contests the court's choice not to credit his account of why he sold his LLC to his mother or whether he received the capital contribution from Keller Williams. But the court addressed these issues in its opinion, and we may not overturn credibility determinations supported by testimony.

Moreover, the yearly income figures used by the trial court are within the statutory meaning of "gross income." The court determined the entities' yearly incomes based on numbers labelled on his tax returns as "gross income," "rents received," passive or nonpassive "income," or gross income minus expenses. Hence, its determinations are consistent with the statutory definition of gross income. *See* Code § 20-108.2(C) ("'[G]ross income' means all income from all sources, and shall include, but not be limited to, income from salaries, wages, commissions, royalties, bonuses, dividends, . . . interest, trust income, . . . rental income."). Besides his reasonable-business-expenses argument and the bare assertion that his net or taxable

- 11 -

income on the returns represents his statutory "gross income," McLawhorn did not contest the trial court's determinations of his yearly incomes.

The trial court's approach to determining, and determinations of, McLawhorn's yearly incomes is consistent with Code § 20-108.2(C) and supported by the testimony and tax returns. Thus, the court's calculation of his gross income is not clearly erroneous, and we affirm the gross income figure that the court assigned to McLawhorn.

Assignment of Error 4 alleges that the evidence establishes only one income figure for each year, which differs from the trial court's determinations. McLawhorn argues that each tax return's net or taxable income must be viewed as the number that reflects his gross income. This argument fails for the same reasons for which McLawhorn's reasonable-business-expenses argument failed. Even if his approach is a valid way of determining his income and is supported by evidence, the trial court's approach is too. And as a statutory matter, Code § 20-108.2(C) does not provide that the net or taxable income on a federal tax return must be the definitive number for "gross income." Instead, the statute treats gross income as a term of art, like reasonable business expense. In other words, the statute does not compel the use of McLawhorn's suggested incomes and the trial court's contrary determinations are supported by evidence.

We reject Assignment of Error 6 for the same reasons. McLawhorn argues that the court's determination of his child support amount was wrong. He argues that this error was due to "McLawhorn's income [being] incorrectly calculated as different than the income" allegedly established by McDaniel. But the above discussion makes clear that the trial court did not err in calculating McLawhorn's income.[4]

_____

[4] Assignment of Error 7 states generally that the court's finding on McLawhorn's income and amount of child support was plainly wrong and an abuse of discretion. For the reasons discussed, we reject this claim as well.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*