# IN THE COURT OF APPEALS OF VIRGINIA

Tuesday the 7th day of April, 2026.

Kevin Jeron Bland, Appellant,

 against

Commonwealth of Virginia, Appellee.

## Record No. 2061-23-2

Upon a Rehearing En Banc

Before Chief Judge Decker, Judges Beales, O'Brien, AtLee, Malveaux, Athey, Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins, White, Bernhard and Duffan

Eric Weathers, Assistant Public Defender (Virginia Indigent Defense Commission, on briefs), for appellant.

Mason D. Williams, Assistant Attorney General (Jay Jones, Attorney General, on brief), for appellee.

On November 26, 2025, came the appellee, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on November 12, 2025, and grant a rehearing en banc on the issue(s) raised in the petition. The petition was granted on December 30, 2025, and the matter was heard en banc on March 31, 2026.

Upon consideration of the petition for rehearing en banc previously granted by this Court, and the Court having heard oral argument en banc, and it now appearing that the petition for rehearing en banc was improvidently granted, it is ordered that the petition for rehearing en banc be dismissed as improvidently granted.

The stay of this Court's November 12, 2025 mandate is lifted, the decision of the panel is reinstated, and the judgment of the circuit court remains reversed.

Beales, Callins and White, JJ., dissenting.

We respectfully dissent from the decision to dismiss the petition for rehearing en banc as improvidently granted. We would instead have affirmed the judgment of the circuit court for the reasons stated in the dissent in the reinstated memorandum opinion.

This order shall be certified to the circuit court.

Teste:     A. John Vollino, Clerk

Entered:     *Ryan Harding*
                Deputy Clerk

## VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **30th** *day of* **December, 2025**.

Kevin Jeron Bland, Appellant,

against        Record No. 2061-23-2
Circuit Court Nos. CR22A00289-01 and CR22A00289-02

Commonwealth of Virginia, Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On November 26, 2025, the appellee, by the Attorney General of Virginia, filed a petition requesting that the Court set aside the judgment rendered on November 12, 2025, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the Court grants the petition for rehearing en banc and reinstates the appeal of those issues on the docket. The Court stays the mandate previously entered in this case pending the Court's en banc decision.

The parties must file briefs in compliance with the schedule set forth in Rule 5A:35(b).

A Copy,

Teste:

A. John Vollino, Clerk

By:      *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

Present: Judges Beales, Chaney and Bernhard
Argued at Richmond, Virginia


KEVIN JERON BLAND

                                                MEMORANDUM OPINION* BY
v.        Record No. 2061-23-2                  JUDGE DAVID BERNHARD
                                                NOVEMBER 12, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Eric Weathers, Assistant Public Defender (Catherine French
Zagurskie, Chief Appellate Counsel; Virginia Indigent Defense
Commission, on briefs), for appellant.

Mason D. Williams, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Kevin Jeron Bland appeals the circuit court's revocation of his suspended sentences,

arguing his 10-year active sentence violated Code § 19.2-306.1(C) because his conduct

amounted to only a first technical violation. Although he did not raise this issue at the revocation

hearing, he invokes the ends of justice exception to seek appellate review on the merits.[1]

Few appeals present the extraordinary circumstance of a trial court imposing the harshest

punishment legally possible for the underlying substantive offenses where the statute authorized

no punishment at all for this type of probation violation. This is such a case.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Bland also contends the circuit court failed to adequately consider evidence offered in
mitigation before imposing a 10-year active revocation sentence. Because this Court resolves the
appeal on other grounds, we decline to address Bland's mitigation claim, as doing so is
unnecessary to the resolution of this case.

For what facially amounted only to a first technical probation violation, conduct expressly capped by Code § 19.2-306.1(C) at no incarceration, the circuit court nonetheless revoked Bland's suspended sentences in full and imposed the maximum penalty of 10 years of active confinement. The Commonwealth's reliance on alleged violations of a GPS-monitoring condition cannot cure the illegality of Bland's sentence. That argument is revisionist, raised for the first time on appeal and never presented to or relied upon by the circuit court. More fundamentally, the GPS-monitoring condition was noticed only as a probation officer-imposed instruction, not as a judicially ordered term, and, as reflected in the circuit court's underlying probationary sentencing order, pertained to postrelease supervision beyond the circuit court's enforcement authority.

The circuit court's sentence was not a routine error in classification, or a marginal overstep of discretion, but the imposition of the maximum forbidden penalty for the least serious category of violation. Such a convergence of error is exceptional. It is precisely in these narrow circumstances that the ends of justice exception to Rule 5A:18 must apply, for to allow the circuit court to contravene an unmistakable legislative prohibition and then impose punishment of such severity would subvert the statute's purpose and erode confidence in the fairness of the judicial process.

Accordingly, under the discrete facts of this case, as further explained below, we reverse and remand for resentencing consistent with Code § 19.2-306.1(C), which explicitly prohibits any active term of incarceration for Bland's first technical violation.

BACKGROUND

Bland originally pleaded no contest to two counts of failing to register as a sex offender, second offense. On April 1, 2022, the circuit court sentenced him to two five-year prison terms, all suspended. The court conditioned the suspension on Bland's good behavior and placement on

- 2 -

supervised probation for an indefinite period not to exceed five years, or until released by the court or his probation officer. Bland was to "receive treatment pursuant to statute." The court imposed "an additional five years of post release supervision, including electronic monitoring by means of a Global Positioning System (GPS) under the supervision and review of the Virginia Parole Board pursuant to § 19.2-295.2 and § 53.1-165." The court also directed Bland to comply with the Parole Board's rules and requirements.

Bland was released from confinement to supervised probation on October 23, 2022.[2] Bland did not report to the probation office for two days, but "while in the office [he] reviewed and signed his supervision conditions, Sex Offender Special Conditions, and was placed on [GPS] Monitoring." Bland was reminded that he had been expelled from the Regency Inn "due to his prior behavior on supervision" at that motel. Bland established his home on Hull Street Road in Chesterfield County.

On several occasions from November 1 to November 3, 2022, Bland's probation officer, Haley Smith, told him he could not reside in the waiting room of Chippenham Hospital or register it as his residence unless he was a resident and long-term medical patient. Bland "was verbally resistant and not willing to collaborate."

On December 3, 2022, Smith learned Bland had been improperly using emergency housing at the Regency Inn and reprimanded him. Although a GPS exclusion zone was placed around the Regency Inn, Bland went there twice more. Bland was informed on January 21, 2023, that he was not maintaining an adequate charge on his GPS unit, and on February 19, 2023, he received an inclusion zone violation for not complying with curfew requirements. Due to Bland's continuing GPS violations and failure to follow directions, Smith enrolled him in the Cognitive Community

---

[2] The record does not explain the basis for his confinement.

- 3 -

Programming Decision Points program. On February 23, 2023, he began to attend its weekly group sessions.

On March 3, 2023, Smith learned that Bland was trying to access her personal Facebook account. Bland had contacted a Cognitive Counselor to request alternate contact information for Smith beyond her designated office phone number. Bland had not been given permission to use social media, as required by his sex offender special conditions. During a meeting on March 6, 2023, Bland eventually admitted that he had tried to view Smith's social media account and had also been using a second social media account on TikTok. When Smith informed Bland during the interview that he had to sign up for and comply with Remote Com by March 9, 2023, so his internet use could be monitored, he admitted he had viewed pornographic content and used a public library to view the internet. Bland's brother-in-law called inquiring about the case, so Smith discussed with Bland a possible meeting between her and her supervisor and Bland and his family. Bland, though, "became verbally resistant to the additional supervision restriction in place and [the fact] that he would be required to download Remote Com by March 9, 2023, to supervise his internet usage."

On March 7, 2023, Bland approached a public library, thereby triggering an exclusion zone alert, but did not go inside. When he discussed the alert with Smith over the phone, he became "combative." Despite being told to download Remote Com by March 9 and then being given an extension to March 10, Bland did not download it until March 14, 2023.

The violation report further recited that Bland had lost out on an employment opportunity and participation in a residential program because he had not been forthcoming with information about his background and status. After being denied admission to the program, Bland refused to have contact with Smith except at his Decision Points group. On April 4, 2023, Bland declined the system access to his Remote Com device, and two days later, he failed to report for his Decision Points group meeting. On April 10 and 13, 2023, Bland was notified of GPS battery alerts. During

a polygraph examination on April 13, Bland admitted he used cocaine and alcohol "periodically" and "continued to consume pornography." A urine screen showed Bland tested positive for cocaine and alcohol. From April 14 to April 27, 2023, Bland did not contact or otherwise communicate with Smith, and he missed a scheduled appointment with her on April 18. Bland also failed to report to the Healing Place Substance Abuse Program as directed on April 27.

On May 3, 2023, Smith reported to both the Chesterfield and King George circuit courts Bland's noncompliance with probation. Bland was arrested on a capias issued by the Chesterfield circuit court on June 15, 2023. On July 5, 2023, Bland's supervision was temporarily assigned to Senior Probation Officer Rodney Dent. The Chesterfield show cause was dismissed on August 25, 2023, because Dent did not appear as he was on vacation. Bland was then held in custody on a show cause for the King George circuit court.

On September 20, 2023, Dent authored the major violation report (MVR) that formed the basis for the allegations upon which Bland was ultimately found in violation of probation in the instant case. The MVR alleged Bland had violated probation Condition 6, which provides: "I will follow the Probation and Parole Officer's instructions and will be truthful, cooperative, and report as instructed." As part of that condition, the MVR alleged violations of special sex offender conditions imposed by the probation officer, including that Bland had used cocaine and alcohol, accessed social media sites, failed to obtain approval to use internet services and install monitoring software, failed to comply with electronic monitoring requirements, including GPS monitoring, and viewed pornographic material.[3] Dent also alleged a violation of Condition 8, which barred Bland's use of controlled substances. Dent requested a capias for Bland. Dent stated Bland appeared "not to be amenable to supervision" and requested he be evaluated for an alternative supervision program such

___

[3] The report also stated Bland was required to register any change in his electronic address with the State Police but said it was "unknown" whether he had registered any account with the State Police.

- 5 -

as Community Corrections Alternative Program (CCAP) "to address his current substance use and barriers to successful community reentry." The circuit court issued a capias, which was executed on October 8, 2023.

At the ensuing revocation hearing held October 26, 2023, in the Chesterfield circuit court, Bland did not contest the fact that he had violated terms of his suspended sentences as alleged in the MVR. The court received the MVR along with an addendum stating that on October 17, 2023, the King George circuit court had entered an order revoking and resuspending all but two years of Bland's sentence there and removing him from supervised probation. Dent described the situation as a "repeat cycle of multiple officers trying to do their best to help him out and . . . keep him in compliance. But it's just the cycle keeps going and he has just been non[]compliant to the point where we just don't know what to do with him" if the circuit court placed him back on probation.

In closing argument, defense counsel argued Bland had been homeless, which "makes it harder to be on probation." Counsel also contended Bland had been "making efforts," which "distinguish[ed] him from some people who abscond and don't make the efforts." In its argument, the Commonwealth stressed Bland was a convicted sex offender who had repeatedly violated rules relating to his unauthorized use of the internet and viewing pornography.

The circuit court revoked Bland's two suspended sentences and imposed all of the 10-year cumulative sentence. In addition to Bland's use of alcohol and cocaine, the court emphasized that Bland admittedly used social media and viewed pornographic materials. The court found that "the public has a right to have the folks who are going to behave this way removed." The court also concluded Bland would "not follow the law" or the court's orders. Bland appealed.

## ANALYSIS

This appeal raises three issues: whether Bland's conduct was a first technical probation violation barring incarceration; whether the alleged GPS violation supplied an independent basis for

revocation; and whether, if not, trial defense counsel's failure to object may be excused under the narrow ends of justice exception to Rule 5A:18. We begin with whether Bland's violations were properly classified, for if they constitute only a first technical violation under Code § 19.2-306.1, the statute categorically excludes any term of active incarceration.

*I. Bland's violations were a first technical violation for which incarceration was barred.*

Bland challenges his 10-year revocation sentence on the ground that he was guilty of only a first technical violation and thus was not subject to an active sentence under Code § 19.2-306.1(C). "[T]he '*authority* of the trial court to revoke [an] appellant's suspended sentence is one of statutory interpretation and presents a pure question of law, which this Court reviews de novo.'" *Green v. Commonwealth*, 69 Va. App. 99, 103 (2018) (second alteration in original) (italics omitted) (quoting *Wilson v. Commonwealth*, 67 Va. App. 82, 88-89 (2016)). "[W]hen construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 190 (2023) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Heart v. Commonwealth*, 75 Va. App. 453, 466 (2022) (quoting *Cuccinelli*, 283 Va. at 425).

To determine whether Bland's conduct falls within a technical or nontechnical category, this Court applies the framework outlined in *Diaz-Urrutia v. Commonwealth*, which sets forth a mandatory four-step analysis. "Code § 19.2-306.1 limits the period of active incarceration that a circuit court can impose for . . . certain 'technical violations' enumerated under [Code § 19.2-306.1(A)]." *Heart*, 75 Va. App. at 460-61 (quoting *Green v. Commonwealth*, 75 Va. App. 69, 78 (2022)). "Whereas Code § 19.2-306(C) does not distinguish between types of violations, Code § 19.2-306.1 creates two tiers of probation violations: (1) technical violations, based on a probationer's failure to do one of ten enumerated actions, and (2) non-technical

- 7 -

violations." *Id.* at 466. "[T]he conduct statutorily defined as technical violations are specific requirements imposed on all probationers supervised by probation officers." *Diaz-Urrutia*, 77 Va. App. at 193. By contrast, "[n]on-technical violations include 'convict[ion] of a criminal offense that was committed after the date of the suspension' and 'violat[ion of] another condition other than (i) a technical violation [in subsection (A)] or (ii) a good conduct violation that did not result in a criminal conviction.'" *Thomas v. Commonwealth*, 77 Va. App. 613, 622 (2023) (second, third, and fourth alterations in original) (quoting Code § 19.2-306.1(B)).

Code § 19.2-306.1 restricts the active sentences that could be imposed on Bland for first and second technical violations, directing there can be no term of incarceration upon a first technical violation and granting circuit courts discretion to impose, in some circumstances, up to 14 days of incarceration for a second violation. Code § 19.2-306.1(C). "The court may impose whatever sentence might have been originally imposed for a third or subsequent technical violation." *Id.* Under Code § 19.2-306.1(B), the circuit court "may revoke the suspension and impose or resuspend any or all of that period previously suspended" for a violation other than a technical violation or a good conduct violation that did not result in a criminal conviction, as well as for a conviction of a criminal offense committed after the date of the suspension.

The circuit court, therefore, had a statutory duty to apply the limitations set forth in Code § 19.2-306.1(C) in sentencing Bland. Although the court was not required to expressly state that it fulfilled this duty, the record and resulting judgment make clear that the statutory cap was not applied.

As this Court explained in *Diaz-Urrutia*, a sentencing court must follow a defined analytical process before determining what sentence it may impose following a probation violation: "[A] sentencing court *must engage* in a four-step process to *classify the basis of the*

*revocation* proceeding *before* determining what sentence it may impose."[4] *Diaz-Urrutia*, 77 Va. App. at 193 (emphases added).

"First, the court must determine whether 'the violation conduct matches the conduct [specifically] listed in Code § 19.2-306.1(A).'" *Id.* at 193-94 (alteration in original) (quoting *Delaune v. Commonwealth*, 76 Va. App. 372, 383, *aff'd*, 302 Va. 644 (2023)). "If so, then the defendant has committed a technical violation and the sentencing limitations found in Code § 19.2-306.1(A) apply, regardless of whether the sentencing court included that conduct as 'another condition' of the defendant's suspended sentence." *Id.* at 194.

Second, "[i]f the violation conduct does not match the conduct listed in Code § 19.2-306.1(A), the court must then determine whether 'another condition,' other than the generic good behavior condition of the defendant's suspended sentence covers the conduct." *Id.* "If so, then the court's sentencing authority is not restricted by Code § 19.2-306.1." *Id.*

Third, "[i]f the defendant's sentencing order contained no other condition matching the violation conduct, then the court must determine whether the conduct resulted in a new criminal conviction." *Id.* "If so, then the court's sentencing authority is not restricted by Code § 19.2-306.1." *Id.*

"Finally, if none of the above apply, then the court must determine whether the defendant has engaged in substantial misconduct amounting to a good conduct violation." *Id.*

---

[4] In 2021, the General Assembly enacted House Bill 2038 (Chapter 538 of the 2021 Special Session), adding Code § 19.2-306.1 to Virginia's sentencing statute. That legislation explicitly defines "technical violations" and establishes a tiered sanction structure: no active incarceration for a first technical violation, up to fourteen days for a second, and unrestricted sentencing only beginning with a third or subsequent violation. Code § 19.2-306.1(C). These reforms embody the legislature's clear policy choice to curb incarceration for lesser probation infractions, thereby advancing goals of proportionality, promoting rehabilitative alternatives, and ensuring efficient use of correctional resources. This approach recognizes that technical violations, while representing noncompliance with supervision terms, differ fundamentally from new criminal convictions in both culpability and appropriate response.

The record contains no indication that Bland had been previously adjudicated for a technical violation. The MVR recounted a series of unadjudicated violations in the wake of repeated warnings and instructions. Among other things, Bland admittedly used cocaine and alcohol and disregarded instructions regarding where he was permitted to live. In addition, he used social media without permission and viewed pornography at a public library. Bland also attempted to interact with his probation officer's personal Facebook account when he was not authorized to use the internet without monitoring software.

The frustration with Bland exhibited by the circuit court judge is understandable. The problem here is that the circuit court did not possess the statutory authority to sentence Bland in the manner it did. All of Bland's violations *noticed* for adjudication[5] involved special conditions imposed by the probation officer, not the court. As we have emphasized, "notwithstanding [the] permissible delegation of *supervisory* authority, a court may not rely upon probation officers to independently impose 'special conditions.' That task is reserved for the circuit court at sentencing." *Ellis v. Commonwealth*, 84 Va. App. 531, 535 (2025). Thus, the violations ascribed to Bland constitute only a first technical violation. *See* Code §§ 19.2-306.1(A)(v) ("follow the instructions of the probation officer, be truthful and cooperative, and report as instructed"); -306.1(A)(vii) ("refrain from the use, possession, or distribution of controlled substances or related paraphernalia").

Accordingly, the circuit court acted beyond its authority under § 19.2-306.1(C) in imposing a term of active incarceration for Bland's first technical violation of probation.

---

[5] *See infra* at 10-14.

*II. The revocation of Bland's probation cannot be sustained on the basis of GPS violations that were noticed and arose solely from conditions imposed by the probation officer, rather than from any requirement in the original sentencing order, which applied only to parole supervision.*

The Commonwealth contends, for the first time on appeal, that Bland's alleged violations of a special GPS-monitoring condition could support the circuit court's revocation sentence, a contention never presented to or expressly relied upon by the circuit court. The circuit court was obliged to inform Bland in "a *written statement* . . . as to the evidence relied on and *reasons* for revoking [probation]." *See Henderson v. Commonwealth*, 285 Va. 318, 326 (2013) (second alteration in original) (emphases added) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). In carrying out this task in its sentencing revocation order, the circuit court did not include the GPS violations as reasons for its revocation decision.

More to the point, the circuit court could impose incarceration only for noticed violations that were more than probation officer-imposed conditions. Before Bland could be incarcerated, he was entitled to "*written notice of the claimed violations*." *Price v. Commonwealth*, 51 Va. App. 443, 446-47 (2008) (emphasis added) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). That due process requirement of written notice to Bland was met through the MVR, which was incorporated by reference into the show cause order that brought him before the circuit court. The allegations in the MVR concerning Bland's violation of Condition 6, requiring that he follow the probation officer's instructions, and relating to GPS compliance were as follows:

> Violation Notes:
> Special Sex Offender Instructions:
>
>    . . . .
>
> #10. If mandated by code section, Department of Corrections procedure, or *instructed to do so by your supervising P&P Officer*, you will comply with electronic monitoring to include, but not limited to Global Positioning (GPS), AnyTrax, or other means.

- 11 -

> GPS violations incurred during this period of supervision:
> Home – February 19, 2023, June 4, 2023, June 6, 2023, June 8, 2023
> & June 10, 2023.
> Exclusion Zone – December 7, 2022, January 26, 2023 & March 7,
> 2023
> Bracelet Gone - May 2, 2023, May 5, 2023 & May 10, 2023
> Battery – January 21, 2023, April 10, 2023 & April 13, 2023

(Emphasis added).

Three independent reasons settle that the GPS-related allegations cannot support the revocation of Bland's suspended penitentiary sentence.

First, Condition 10 appears under the "Special Sex Offender Instructions" imposed by the probation officer and applies only when Bland is "instructed to do so by [the] supervising P&P Officer." As already discussed *supra* at 7-10, violation of the conditions independently imposed by the probation officer were at most a first technical violation. *See* Code § 19.2-306.1(A)(v); *Ellis*, 84 Va. App. at 535.

Second, the MVR's reference to GPS monitoring, "[i]f mandated by code section, [or] Department of Corrections Procedure," is conditional and ambiguous because it neither clearly states that GPS monitoring was required under that clause nor identifies the authority by which it was mandated. It does not assert that any alleged GPS violation constituted a breach of a court-ordered condition. Under Code § 19.2-303, the circuit court's authority to revoke a suspended sentence is limited to violations of probation conditions that it has itself imposed. Thus, Bland's revocation could be adjudicated only on the *allegations set forth in the written* MVR, which amounted to a first technical violation. *See* Code § 19.2-306.1(A)(v); *Ellis*, 84 Va. App. at 535; *Price*, 51 Va. App. at 446-47.

Third, the plain language of the circuit court's original sentencing order referencing "GPS" details an *ancillary* sentencing term not part of probation, imposing postrelease[6] supervision, a condition of parole:[7]

> *Post Release Supervision.* In addition to the above sentence to incarceration, the Court imposes an *additional* five years of post release supervision, including *electronic monitoring* by means of a Global Positioning System (GPS), *under the supervision* and review *of the Virginia Parole Board* pursuant to § 19.2-295.2 and § 53.1-165. The defendant shall comply with all the rules and requirements set by the Virginia Parole Board.

(Emphases added). While the original sentencing order included the above reference to GPS monitoring, that condition applied only to postrelease supervision governed by Code §§ 19.2-295.2 and 53.1-165. Enforcement of those provisions lies with the Virginia Parole Board, not the circuit court. For GPS monitoring to constitute an enforceable provision directly by the circuit court against Bland, the sentencing order was required to set forth that obligation "in definite terms to sufficiently place [Bland] on notice as to this important condition." *See Thomas v. Commonwealth*, No. 0815-24-3, slip op. at 10, 2025 Va. App. LEXIS 542, at *17-18 (Sept. 16, 2025) (reversing a

---

[6] The statutory scheme employs the term "postrelease" in its single-word form. In verbatim quotations herein, however, the term appears in variant forms, including hyphenated and as two separate words.

[7] The Code § 19.2-295.2 imposition of the GPS term is controlled in this case by Code § 19.2-295.2:1. That statute says that the provisions of Code § 19.2-306 apply to GPS violations "mutatis mutandis," which means "all necessary changes having been made." *Mutatis Mutandis*, *Black's Law Dictionary* (11th ed. 2019). Code § 19.2-295.2:1 was last amended before the legislature passed § 19.2-306.1. At the time of the most recent amendment to § 19.2-295.2:1, the General Assembly had not yet enacted Code § 19.2-306.1. That statute, which imposes procedural and substantive limits on a court's ability to revoke a suspended sentence based on technical violations, was later enacted and made part of the same chapter of the Code. Because § 19.2-295.2:1 expressly incorporates the provisions of § 19.2-306, the procedural requirements and limitations of § 19.2-306.1—now part of the framework for revocation proceedings under § 19.2-306—must also apply, mutatis mutandis, to violations of GPS monitoring under § 19.2-295.2. Thus, the circuit court lacked authority to revoke the suspended sentence based on a GPS violation absent compliance with § 19.2-306.1, which explains why the revocation hearing was not noticed and set on the GPS violation.

- 13 -

revocation sentence where the restitution condition lacked sufficient clarity in the sentencing order).

Here, Bland received notice only that GPS monitoring was imposed as part of his parole supervision. The circuit court did not identify GPS monitoring as a basis for revocation because, under the sentencing order, it was neither an enforceable condition of *probation* nor a term upon which the court relied.

Accordingly, the alleged GPS violations, never noticed as more than infractions of probation officer-imposed conditions, and never imposed by court order except as part of postrelease supervision, cannot support the revocation sentence imposed.

Having determined that Bland's violations amounted only to a first technical violation, and that the GPS allegations cannot independently sustain the revocation sentence as noticed, we next consider whether Bland's failure to preserve his statutory argument bars appellate review or whether, under these circumstances, the ends of justice exception permits us to reach the merits.

III. *The ends of justice exception applies in the narrow, fact-bound circumstances of this case, where the record shows a facially unauthorized sentence imposed for a first technical probation violation based solely on probation officer-imposed conditions, with no prior adjudications, no new criminal conviction, and no applicable sentencing discretion, resulting in the maximum possible sentencing error, an extraordinary 10-year punishment the statute flatly forbids.*

Bland acknowledges that he did not preserve an objection to the circuit court's disregard of Code § 19.2-306.1(C). Ordinarily, that failure would bar appellate review under Rule 5A:18. But this case presents more than a routine sentencing error: the circuit court imposed the *maximum* possible sanction, 10 years of active incarceration, for a first technical probation violation noticed solely as based on probation officer-imposed conditions, when the statute flatly forbade any incarceration at all. In the context of sentencing, the Supreme Court of Virginia has recognized the ends of justice exception may apply when the trial court fails to adhere to a mandatory sentencing scheme, thereby imposing a punishment not authorized by law. The exception exists, as the Supreme Court has emphasized, "to prevent a grave injustice 'or the denial of essential rights.'"

- 14 -

*Amazon Logistics, Inc. v. Va. Emp. Comm'n*, ___ Va. ___, ___ (Mar. 6, 2025) (quoting *Charles v. Commonwealth*, 270 Va. 14, 17 (2005)). As this Court has observed, "'[d]enying [a defendant] his liberty on the basis of a *void* sentence would impose a grave injustice upon him.'" *Gordon v. Commonwealth*, 61 Va. App. 682, 685 (2013) (second alteration in original) (emphasis added) (quoting *Charles*, 270 Va. at 20).

Virginia precedent establishes that when a trial court disregards a mandatory statutory sentencing limitation, an unpreserved error may fall within the remedial scope of the ends of justice exception. *See Rawls v. Commonwealth*, 278 Va. 213, 221 (2009) (applying the ends of justice exception to reverse a sentence that was void ab initio); *Charles*, 270 Va. at 20 (applying the exception to reverse a voidable revocation of probation sentence). This case falls within that narrow category.

*Charles v. Commonwealth* illustrates the core principle that the ends of justice exception may be invoked to correct a sentencing error when a defendant is effectively subjected to more incarceration time than the law authorizes in the probation revocation context. In that case, the error arose because the trial court failed to credit time the defendant spent in a detention program, thereby imposing a total term of incarceration longer than permitted by law, a *voidable* error on the part of the court. *Charles*, 270 Va. at 19-20. Thus, under *Charles*, when a court disregards a statutory cap such as that in Code § 19.2-306.1, consideration of the ends of justice exception is not precluded. *Id.*

Here, the only violations *noticed* for adjudication were conditions imposed by the probation officer, not conditions ordered by the circuit court. *See supra* at 10-14. Bland had no prior adjudicated probation violations and no new criminal convictions. Yet the circuit court disregarded the statutory cap prohibiting incarceration and imposed 10 years of confinement where the statute authorized no active time at all. Had the circuit court merely misclassified the violation or

misinterpreted the statute, Bland's procedural default would likely have precluded appellate review. That is not, however, what occurred here. The circuit court did not simply misapply Code § 19.2-306.1(C); it failed to apply its mandatory provisions altogether.

In *Lane v. Commonwealth*, 82 Va. App. 658, 665 (2024), this Court reversed the revocation judgment where "the trial court displayed blatant disregard for Code § 19.2-306.1." Whether a trial court brazenly declares disregard of the statute as in *Lane*, or merely quietly overlooks it, as here, the effect is the same, to "undercut the General Assembly's legislative power by practically nullifying the sentencing limitations imposed on trial courts in Code § 19.2-306.1." *See id.* at 666 (declining to deem the issue moot because it was capable of repetition yet evading review).

The circuit court's failure to comply with Code § 19.2-306.1(C) is not a mere technical oversight but a "clear, material, and substantial error," one that warrants review under the ends of justice exception because the court failed to apply a mandatory legislative sentencing cap within the narrow circumstances of this case. *See Brown v. Commonwealth*, 8 Va. App. 126, 132 (1989) ("trial court did consider the misstatements of fact contained in the presentence report" thereby effectively sentencing the defendant "for a crime other than that for which he was convicted").

We do not suggest that routine sentencing errors or ordinary misapplications of Code § 19.2-306.1 would justify ends of justice relief. In essence, the ends of justice exception is a narrowly confined safeguard, invoked only for those extraordinary and egregious errors that would lead any objectively reasonable person to question the fundamental fairness of the judicial process. This Court exercises restraint and respects the finality of most sentencing decisions, addressing only those rare instances where a judge's error is not merely a routine mistake, but a profound disregard of statutory limits. When a statutory cap is completely disregarded and the

maximum incarceration term is imposed where none is authorized, this may create a grave injustice that undermines confidence in the legal system and where application of the ends of justice exception may find its rightful place.

Considering the aforesaid principles, this case presents a rare convergence of factors that collectively distinguish it from more typical appeals where the exception would not apply: a *facially unauthorized sentence* imposed for a first technical probation violation based solely on probation officer-imposed conditions[8]; no prior adjudication of violations; no new criminal conviction; and, under the statute, no judicial discretion to impose incarceration, *coupled with* the imposition of the *maximum punishment possible*, a *substantial* 10-year term the statute unequivocally forbids.[9]  The result is not a marginal misstep, but the *most grave form of sentencing error* the circuit court could have made in this case in derogation of Code § 19.2-306.1(C).  To ignore this level of disregard for the statutory limits under these precise circumstances would frustrate the General Assembly's express intent, offend basic principles of fairness, and transform trial defense counsel's silence into a vehicle for the imposition of a wholly unpermitted *maximal* penitentiary sanction.[10]  The confluence of all of these elements renders Bland's case exceptional.  It is this unique combination of *all* these circumstances aforesaid, and this combination alone, that justifies our application of the ends of justice exception in this instance.

---

[8] *See supra* at 10-14.

[9] In contrast, Dent requested Bland be evaluated for an alternative supervision program such as Community Corrections Alternative Program "to address his current substance use and barriers to successful community reentry."

[10] This circumstance is particularly troubling where, as here, the defendant neither selected his own counsel nor proceeded pro se.  Instead, the circuit court appointed counsel to provide an adequate defense, and that counsel, through inaction, allowed such a manifest error to occur.

CONCLUSION

For the foregoing reasons, we reverse the circuit court's revocation order imposing incarceration and remand for resentencing in accordance with the statutory provisions governing first technical violations, which do not authorize incarceration.

*Reversed and remanded.*

Beales, J., dissenting.

The majority concludes that the circuit court judge erred when he decided to revoke the entirety of Bland's suspended sentence. In reaching his revocation decision, the circuit court judge was faced with the following facts. Bland had previously been convicted of aggravated sexual battery and of failure to register as a sex offender. He was also described in his previous sex offender registry entries as a "Sexually Violent Predator" who had committed a Tier III offense. Following an April 1, 2022 hearing, during which Bland "pled no contest to two charges of failing to register as a sex offender," the circuit court judge sentenced Bland to "5 years for each charge of failing to register as a sex offender/2nd offense."[11] However, in an act of grace,[12] the judge suspended the entirety of Bland's sentence "upon the following condition(s)," which included:

> Post Release Supervision. In addition to the above sentence to incarceration, the Court imposes an additional five years of post release supervision, including electronic monitoring by means of a Global Positioning System (GPS), under the supervision and review of the Virginia Parole Board pursuant to § 19.2-295.2 and § 53.1-165.

Rather than taking advantage of the grace extended to him by the circuit court judge, Bland repeatedly violated the conditions of his suspended sentence. In particular, Bland (1) failed to charge his GPS monitoring device, (2) removed his GPS device, (3) failed to comply with his curfew, (4) continued to use social media, (5) used computers at public libraries to view

---

[11] Since Bland had been "convicted of a Tier III offense," his failure to properly register as a sex offender was "a Class 5 felony." Code § 18.2-472.1. Thus, the circuit court judge did not actually even give Bland the maximum sentence for either of his failure-to-register convictions because the maximum sentence for a Class 5 felony is 10 years of incarceration. Code § 18.2-10.

[12] "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008) (quoting *Pierce v. Commonwealth*, 48 Va. App. 660, 667 (2006)).

pornography, (6) refused to timely download monitoring software, (7) failed to properly report his sex offender status to a potential employer, (8) refused to contact his probation officer consistently, and (9) used cocaine and alcohol. When confronted by his probation officers, he was described as "verbally confrontational." Bland even attempted to go online and view his female probation officer's personal Facebook account, became "verbally resistant to additional supervision," and even "threaten[ed] a physical confrontation" with his male probation officer. Bland also failed to timely complete programs that his probation officers asked him to attend as a result of his repeated probation violations, including the "Cognitive Community Programming Decision Points" program. After many months of supervision and probation violations nearly too numerous to count, Bland's probation officer filed a major violation report ("MVR") with the circuit court.

Bland appeared before the circuit court judge for a show cause hearing on October 26, 2023. At the beginning of the hearing, the circuit court judge told Bland that he was "before the Court today to show cause" as to "why your previously suspended sentence should not be revoked." The judge also told Bland that he could be "sentenced to serve time based upon violations outlined in the major violation report dated September 20th, 2023." Among the many violations listed in the MVR, the circuit court judge was free to consider the 14 individually listed "GPS violations incurred" by Bland "during this period of supervision." At the conclusion of the October 26, 2023 hearing, the circuit court judge revoked the entirety of Bland's suspended sentence and resuspended none of that time. The judge explained that Bland "has shown this Court that he will not follow the law. He then shows the probation officer that he will not follow instructions *and shows the Court that he will not follow what this Court says*." (Emphasis added). The circuit court then entered a written order on November 3, 2023 that

- 20 -

reiterated its October 26, 2023 bench ruling and required Bland to actively serve the ten years that had previously been suspended.

Given the above facts, the case now before this Court on appeal presents a straightforward question. Indeed, this Court does not even need to reach the issue of whether to invoke the rarely used ends-of-justice exception here because the record before this Court on appeal clearly establishes that Bland— a "Sexually Violent Predator" in Virginia—violated a special condition of his suspended sentence when he failed to comply with the GPS monitoring requirement imposed by the circuit court in the final sentencing order. Furthermore, while Bland violated other aspects of his suspended sentence, his failures to abide by the special condition that the judge included in his 2022 sentencing order requiring electronic GPS monitoring clearly does not match any "of the enumerated technical violations set forth in Code § 19.2-306.1(A)." *Ellis v. Commonwealth*, 84 Va. App. 531, 538-40 (2025) (quoting *Commonwealth v. Delaune*, 302 Va. 644, 657 (2023)). Thus, the circuit court simply did not err when it revoked the entirety of Bland's previously suspended sentence because Bland's violation of a *special condition* spelled out in that sentencing order for Bland's original conviction makes clear that the circuit court was "not subject to any sentencing limitations" in Code § 19.2-306.1. *Id.* at 540 (quoting *Shifflett v. Commonwealth*, 81 Va. App. 277, 292 (2024) (en banc)).[13]

In its final April 8, 2022 sentencing order, the circuit court had conditioned Bland's suspended sentence on his compliance with "five years of post release supervision" by "the Virginia Parole Board." The sentencing order also directed that Bland's supervision would include "electronic monitoring by means of a Global Positioning System (GPS)." The circuit

---

[13] The majority opinion takes the Commonwealth to task for not arguing in the trial court that Bland's GPS monitoring condition was a special condition of his suspended sentences that was imposed by the circuit court judge. However, the Commonwealth, as appellee, is not restricted on appeal to making only those arguments it raised below, particularly when appellant does not make that argument in the trial court either.

court therefore imposed GPS monitoring as a special condition of Bland's suspended sentence because (1) the court specifically listed that condition in its sentencing order, and (2) GPS monitoring is not among the enumerated technical violations listed in Code § 19.2-306.1(A). *See Ellis*, 84 Va. App. at 543 (quoting *Shifflett*, 61 Va. App. at 298) (comparing "what the circuit court's 'sentencing order required' to the enumerated violations in Code § 19.2-306.1(A)" in order to decide whether the court had imposed a special condition); *Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 193 (2023) (where this Court explained that "in discerning the intent of the General Assembly, we think it significant that the conduct statutorily defined as technical violations are specific requirements imposed on all probationers supervised by probation officers, who are employees of the executive branch of government and not by judges whose task is to focus on the individual defendant").

The record establishes that Bland violated the GPS monitoring special condition imposed by the circuit court when he repeatedly entered excluded zones, failed to comply with his curfew, failed to charge his GPS device, and removed his GPS device on more than one occasion. The circuit court essentially recognized that Bland had violated the court's GPS monitoring special condition when the court stated on the record that Bland had shown "the probation officer that he will not follow instructions"—*and especially when he also stated* that Bland had shown "the Court that he will not follow what this Court says." Thus, Bland committed a non-technical violation of the conditions of his suspended sentence, and the circuit court acted within its broad sentencing discretion when it revoked the entirety of Bland's suspended sentence. *See* Code § 19.2-306.1(B) (providing that a circuit court "may revoke the suspension and impose or resuspend any or all of that period previously suspended" when a defendant violates a special condition of his suspended sentence). In short, the circuit court did not err in this case.

A separate three-judge panel of this Court came to the same conclusion in a nearly identical case. In *Anderson v. Commonwealth*, No. 1208-23-2, slip op. at 6-7, 2024 Va. App. LEXIS 480, at *9 (Aug. 20, 2024) (per curiam), this Court considered whether a circuit court erred when it sentenced a sex offender to one year of active incarceration after he violated a GPS monitoring requirement that the circuit court judge listed in his final sentencing order.[14] There (as in this case), the GPS monitoring requirement was listed in the sentencing order under a "Post-Release Supervision" sub-heading, which was listed separately from the "Supervised Probation" sub-heading in the final sentencing order. *Id.*, slip op. at 2, 2024 Va. App. LEXIS 480, at *2. Furthermore (and also just as in this case), the GPS monitoring requirement was to be supervised by someone other than the defendant's probation officer. *Id.* In addition, the defendant (like Bland) signed a set of Sex Offender Special Instructions and was required to comply with a curfew—which was enforced by his probation officer through his GPS device. *Id.*

On appeal, this Court in *Anderson* determined that the GPS monitoring requirement was "[a]mong the court-ordered conditions of his supervision." *Id.* This Court explained that "Anderson was equipped with a GPS monitoring device, as dictated by the original court-imposed conditions of his supervision"—and that Anderson then "signed the Sex Offender Special Instructions, requiring that he comply with a curfew." *Id.*, slip op. at 6, 2024 Va. App. LEXIS 480, at *8-9. This Court then concluded that "upon finding Anderson in violation, the trial court's sentencing authority was not restricted by Code § 19.2-306.1(C)" because Anderson

---

[14] In *Anderson*, this Court unanimously held that "oral argument is unnecessary because 'the appeal is wholly without merit.'" *Id.*, slip op. at 1, 2024 Va. App. LEXIS 480, at *1; Code § 17.1-403(ii)(a); Rule 5A:27(a). This Court also held that "'the dispositive issue or issues have been authoritatively decided,' and Anderson 'has not argued that the case law should be overturned, extended, modified, or reversed.'" *Id.*, slip op. at 1, 2024 Va. App. LEXIS 480, at *1; Code § 17.1-403(ii)(b); Rule 5A:27(b). "While Rule 5A:1(f) provides that unpublished opinions may be cited as informative, 'unpublished opinions are merely persuasive authority and not binding precedent.'" *Miner v. Commonwealth*, 80 Va. App. 414, 425 n.5 (2024) (quoting *Coffman v. Commonwealth*, 67 Va. App. 163, 172 n.7 (2017)).

violated a special condition of the circuit court's final original sentencing order. *Id.*, slip op. at 6, 2024 Va. App. LEXIS 480, at *9. This Court said, "Anderson violated his curfew, and the GPS monitoring rules." *Id.* As in *Anderson*, the factual situation in the case now before this Court likewise requires an affirmance of the circuit court's decision.

The majority contends that the circuit court did not say enough on the record to show that the court applied the four-step process described in *Diaz-Urrutia*.[15] More specifically, while the majority correctly notes, "the court was not required to expressly state that it fulfilled this duty," the majority nonetheless concludes that "the record and resulting judgment make clear that the statutory cap" in Code § 19.2-306.1(C) "was not applied."

Controlling caselaw from this Court and the Supreme Court make clear that "[t]he trial court's rulings come to us with a presumption of correctness." *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022). "The trial court is presumed to know and correctly apply the law 'absent clear evidence to the contrary in the record.'" *Id.* (quoting *Milam v. Milam*, 65 Va. App. 439, 467 (2015)). The Supreme Court has frequently instructed, "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." *Harris v. Joplin*, ___ Va. ___, ___ n.7 (June 12, 2025) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977)). "Today, as in years past, 'nothing is better settled than that everything is to be presumed in favor of the correctness of the

---

[15] In *Diaz-Urrutia*, this Court outlined the framework that circuit courts should use in making sentencing decisions in revocations "before determining what sentence it may impose." 77 Va. App. at 193. First, a circuit court must decide whether the defendant's conduct matches one of the technical violations listed in Code § 19.2-306.1(A). *Id.* at 193-94. Second, if the violation does not fall within any of the categories listed in Code § 19.2-306.1(A), then the circuit court must decide whether the violation was of something other than a "generic good behavior condition." *Id.* at 194. Third, if the defendant did not violate a specific condition of the sentencing order, the circuit court must then consider whether the defendant's conduct "resulted in a new criminal conviction." *Id.* Fourth, "if none of the above apply, then the court must determine whether the defendant has engaged in substantial misconduct amounting to a good conduct violation." *Id.*

rulings of a court of competent jurisdiction, when brought under review in an appellate tribunal, until the contrary is shown.'" *Lisann v. Lisann*, ___ Va. ___, ___ (May 8, 2025) (quoting *Early v. Commonwealth*, 86 Va. 921, 925 (1890)). Indeed, as the Supreme Court has emphasized, "it is an appellate court's function to presume that the trial court made the requisite findings of fact to support its decision." *Commonwealth v. Holland*, ___ Va. ___, ___ (Jan. 16, 2025). The majority's holding thus fails to adhere to this controlling caselaw because it essentially requires circuit courts to provide affirmative proof on the record that they applied the four-step process in *Diaz-Urrutia*.

Moreover, the evidence before this Court on appeal certainly supports that the circuit court did not abuse its discretion in revoking the entirety of Bland's suspended sentence because Bland clearly violated a special condition of his suspended sentence. Binding caselaw from this Court and from the Supreme Court, as noted *supra*, also make clear that the circuit court was not required to expressly state all of its reasons for revoking Bland's suspended sentence including, for example, because Bland failed to comply with the court's GPS monitoring special condition. In addition, no contrary evidence in the record overcomes the strong presumption that the circuit court understood and followed the law when it revoked Bland's suspended sentence. The circuit court did say that Bland has shown that he will not follow the law. The circuit court further noted that Bland has shown his probation officer that he will not follow his instructions—*and then specifically emphasizes* that Bland "shows the Court that he will not follow what this Court says."

The majority's decision today creates a new, heavy burden that circuit courts must overcome to avoid reversal on appeal in revocation proceedings despite consistent Supreme Court caselaw holding that circuit courts are presumed to know the law and apply it correctly—and that the burden is on the complaining litigant to show where and how the circuit court erred.

- 25 -

*See Shannon v. Commonwealth*, 289 Va. 203, 206 (2015) (where the Supreme Court stated that "[t]here is no general requirement that trial courts must state for the record the reasons underlying their decisions"); *Hill v. Commonwealth*, 297 Va. 804, 808 (2019) (explaining that courts in Virginia "presume—even in the absence of specific factual findings—that the trial court resolved all factual ambiguities or inconsistencies in the evidence in favor of the prevailing party and gave that party the benefit of all reasonably debatable inferences from the evidence"); *Woods v. R.D. Hunt & Son, Inc.*, 207 Va. 281, 287 (1966) (noting that the Supreme Court has "often said that on appeal the judgment of the court below is presumed to be correct and that the *onus* is upon the appellant to provide us with a sufficient record from which we can decide whether the trial court erred as alleged" (emphasis in original)).

Furthermore, even if the special condition requirement for electronic GPS monitoring were not a special condition imposed by the circuit court, this appeal of the trial court's revocation of Bland's suspended sentence was not preserved and does not qualify for the ends of justice exception to Rule 5A:18. This case does not result in the imposition of more actual time to serve than the original sentence imposed by the circuit court, as occurred in *Charles v. Commonwealth*, 270 Va. 14, 20 (2005),[16] nor does the time to serve exceed the statutory

---

[16] According to the majority opinion, "under *Charles*, when a court disregards a statutory cap such as that in Code § 19.2-306.1, consideration of the ends of justice exception is not precluded." However, in *Charles*, the Supreme Court decided to invoke the ends of justice exception because "the trial court added five months incarceration to Charles' original five-year sentence"—resulting in Charles actually being incarcerated for longer than his total original sentence dictated. *Charles*, 270 Va. at 18. Contrary to the majority opinion, the trial court did not sentence Charles above the statutory maximum period of incarceration allowed for Charles's original conviction. *Id.* at 16-17. Thus, the Supreme Court in *Charles* addressed a circuit court's erroneous decision to revoke (and not resuspend) more time than the defendant was sentenced to in the first place in the *original final sentencing order* for his *original* conviction. In contrast, the case now before us simply addresses a circuit court's decision to revoke Bland's 10-year suspended sentence (which was actually *not* the statutory cap for his convictions)—a sentence that the circuit court had *already earlier lawfully imposed*. Consequently, contrary to the majority's claim, for all of these reasons, the Supreme Court's decision in *Charles* does not provide support for the majority's invocation of the ends of justice exception here.

maximum allowed for the original conviction as in *Rawls v. Commonwealth*, 278 Va. 213, 215-16 (2009). It involves only an argument about what would be imposed as active incarceration within what was already set as the original sentence for these convictions and within the allowed statutory maximum for these original convictions. *Cf. Hannah v. Commonwealth*, 303 Va. 109, 121 n.5 (2024) (reiterating that "[t]he penalty imposed for a probation violation is not a new sentence but an event in the same criminal proceeding, a continuation of the original sentence with modifications tailored to the defendant's needs in the present moment"). Even major constitutional arguments must be preserved. *See West v. Commonwealth*, 43 Va. App. 327, 339 (2004) (holding—in a case in which the defendant failed to timely raise a double jeopardy argument—that "[e]rror alone, even a violation of constitutional principles, is not sufficient to warrant application of the ends of justice exception to Rule 5A:18"). Given that Bland did not object to the circuit court's revocation decision here, if the majority opinion were to become the new rule, then the rarely implemented ends of justice exception to Rule 5A:18 will have swallowed the Rule.[17]

In short, for all of the foregoing reasons, I respectfully disagree with, and dissent from, this Court's decision in this straightforward case. I would instead affirm the circuit court's revocation of Bland's suspended sentence (for twice failing to register as a sexually violent

---

[17] If appellant's argument on the revocation here is not preserved but the 10 years that is imposed is so great a sentence (although within the statutory maximum and within the original sentence) that it is so egregious that it is an actual miscarriage of justice, what active sentence from a revocation is also too great that it is likewise so "egregious" that the rarely imposed ends of justice exception should be applied? 1 year? 10 months? 10 days? 10 hours?

predator) because of his violation of a special condition of GPS monitoring in the circuit court's order.[18]

---

[18] Despite Bland's claims, the circuit court also did not abuse its discretion when it imposed the ten-year period of active incarceration at issue in this case. The record shows that the circuit court judge put considerable weight on the fact that Bland was a sex offender. The circuit court explained that it "could have a little more mercy on these offenses" if Bland had committed "petit larceny or something like that." However, "when we are talking about violations that are related to sexual offenses this Court can't do it." The circuit court judge also considered Bland's repeated probation violations and concluded that Bland had shown "the probation officer that he will not follow instructions"—*and shown the Court that "he will not follow what this Court says*." (Emphasis added). Thus, "the trial court had before it adequate evidence to support a conclusion that mitigating evidence mustered by the defense did little or nothing to qualify the severity with which this defendant should be sentenced." *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992). The circuit court therefore did not abuse its discretion when it decided not to resuspend any of Bland's sentence.